# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Brian Noel Hester,                          Civ. No.  11-1690 (ADM/JJK)

        Plaintiff,

v.

Redwood County; Lou W. Walling,
individually and in his official capacity
as Chair of the Redwood County Board
of Commissioners; Steven Collins,
individually and in his official capacity
as Redwood County Attorney; the State
of Minnesota; Mona Dohman,                  **AMENDED REPORT AND**
individually and in her official capacity       **RECOMMENDATION**
as Commissioner of the Minnesota
Department of Public Safety; Lower
Sioux Indian Community of Minnesota;
Gabe Prescott, individually and in his
capacity as President of the Lower
Sioux Indian Community of Minnesota;
Jonathan Meece, individually and in his
capacity as a police officer for the
Lower Sioux Indian Community of
Minnesota;

        Defendants.

---

Allen P. Eskens, Esq., Eskens, Gibson & Behm Law Firm, Chtd; and Kenneth R.
White, Esq., Law Office of Kenneth R. White, PC, counsel for Plaintiffs.

Gary R. Cunningham, Esq., Minnesota Attorney General's Office, counsel for
State Defendants.

## PROCEDURAL BACKGROUND

On July 1, 2011, Plaintiff Brian Noel Hester initiated this federal court

action against the above-captioned Defendants.  (Doc. No. 1.)   Plaintiff brought

various federal and state claims against the State of Minnesota and Ramona

Dohman, the Commissioner of the Department of Public Safety, and various

tribal and county officials in both their individual and official capacities.[1]  (*Id*.)  The

State Defendants promptly moved to dismiss Plaintiff's Complaint on July 18,

2011.  (Doc. No. 2.)   On September 2, 2011, Plaintiff filed his motion to amend

the Complaint.  (Doc. No. 12.)   Apparently recognizing that his claims against

the State of Minnesota and Defendant Dohman in her official capacity could not

proceed in light of the Eleventh Amendment, Plaintiff agreed to amend his

Complaint to dismiss the State of Minnesota as a Defendant and to convert the

action to a suit against the individual Defendants in their personal capacities.

(Doc. No. 18, Pl.'s Mem. at 5–6.)   The parties initially agreed to continue the

State of Minnesota and Dohman's motion to dismiss until Plaintiff's motion to

amend was decided by this Court, and this Court held a hearing on Plaintiff's

motion to amend on October 20, 2011.  (Doc. No. 25.)

---

[1]   Plaintiff also brought various claims against the Lower Sioux  Community of Minnesota ("Lower Sioux"), certain individuals in that tribe (collectively "tribal Defendants"), and various Redwood County related Defendants.  The tribal Defendants answered Plaintiff's Complaint on July 25, 2011, and the Redwood County Defendants answered on July 20, 2011.  They did not file an objection to Plaintiff's motion to amend the Complaint.

On November 22, 2011, this Court informed the parties that Defendants'
motion to dismiss would be referred to the undersigned and that a consolidated
Report and Recommendation on the two motions would be issued.   (Doc.
No. 26.)  On November 22, 2011, the motion to dismiss of Defendants Dohman
and the State of Minnesota was referred to this Court for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C).   (Doc.
No. 28.)  This Court held a hearing on Defendants' motion to dismiss on
December 19, 2011.  (Doc. No. 31.)

## FACTUAL BACKGROUND

### The Underlying Incident and State Court Proceedings

Plaintiff's federal lawsuit stems from a December 16, 2008 incident in
which Plaintiff was detained and arrested by the Lower Sioux's tribal officers in
Redwood County, Minnesota, for driving while impaired and refusing to take a
sobriety test.   It also arises from the July 9, 1998 Mutual Aid and Assistance
Agreement between the Lower Sioux and Redwood County "to address the[ir]
respective roles and responsibilities . . . in providing law enforcement services on
the Lower Sioux Indian Reservation."   (Doc. No. 12, Ex. 1 ("Am. Compl.") ¶ 20.)
There, the parties agreed that if the Lower Sioux satisfied "certain statutorily
defined requirements," the tribe would "share concurrent jurisdiction with the
County over persons in the geographical boundaries of property held by the

United States in trust for the Lower Sioux.[2]   (*Id.*)   Each party agreed to assist the other with respect to law enforcement duties to the extent each was "reasonably able in the event of an emergency situation."  (*Id.*)

Before Plaintiff was arrested on December 16, 2008, he failed a preliminary breath test for intoxication.  (Am. Complaint at ¶ 24.)  He was then arrested for driving while intoxicated and transported to Redwood County Jail where he refused to submit to further chemical testing.   (*Id.* ¶¶ 24–26.)  The State charged him with first-degree driving while impaired in violation of Minn. Stat. §§ 169A.20, subd. 1(1), 169A.24, subd. 1(1) (2010), and first-degree test refusal, in violation of Minn. Stat. §§ 169A.20, subd. 2, 169A.24, subd. 1(1) (2010).[3]  The first count was dismissed before trial.  A Redwood County jury found Plaintiff guilty of test refusal.   Plaintiff filed a motion for a new trial and, in

[2]       Specifically, the statute requires that the Lower Sioux file with the Minnesota Board of Peace Officer Standards and Training ("POST") a bond or certificate of insurance for liability coverage with a maximum single occurrence amount set forth in Minn. Stat. § 466.04 (2010), and an annual cap for all occurrences within a year of three times the single occurrence amount.  Minn. Stat. § 626.91, subd. 2(a)(2).  For the time period relevant to Plaintiff's arrest, January 1, 2008 to June 30, 2009, section 466.04 required liability insurance for any number of claims arising out of a single occurrence of $1,200,000. *See* Minn. Stat. § 466.04, subd. 1(a)(6) (setting forth the maximum single occurrence amounts).  The requisite annual cap, therefore, was $3,600,000, which is three times the single-occurrence amount.  The Lower Sioux's liability insurance during that time was $300,000,000, or $600,000 less than what the statute required. *State v. Hester*, 796 N.W.2d 328, 334 (Minn. 2011).

[3]       Both offenses are first-degree violations because they arose within ten years of the first of three or more qualified prior impaired driving incidents. *See* Minn.Stat. § 169A.24, subd. 1(1) (2010).

the alternative, a motion to vacate the judgment.  There, he argued that he did not commit a crime when he refused Defendant Officer Jonathan Meece's request to submit to testing because Meece, a Lower Sioux tribal officer, was not a "peace officer" under Minn. Stat. § 169A.03, subd. 18, and that under Minn. Stat. §§ 169A.41 and 169A.51 only police officers who satisfy the definition of a peace officer under section 169A.03 are authorized to administer a preliminary breath test and the implied-consent advisory.   Plaintiff alternatively argued that the Lower Sioux lacked the authority to appoint peace officers with the same powers as peace officers employed by the Redwood County Sheriff pursuant to Minn. Stat. § 626.91, because the Lower Sioux had not complied with the liability insurance requirements in that statute.  The district court denied Plaintiff's post-trial motions and concluded that Lower Sioux police officers satisfied the definition of a peace officer under section 169A.03, subdivision 18.  *State v. Hester*, 796 N.W.2d 328, 330 (Minn. 2011) (discussing the district court's decision).  The court also held that the Lower Sioux had complied with the liability insurance filing requirements in Minn. Stat. § 626.91, subd. 2(a).   *Id*. Specifically, the court concluded that at the time of Plaintiff's arrest, the Lower Sioux had substantially complied with the requirements of Minn. Stat. § 626.91, subd. 2(a), regarding liability insurance, and that substantial compliance was all that was required.  *Id*. at 330–31.  The Minnesota Court of Appeals affirmed the district court in an unpublished decision, which mirrored the district court's opinion.   *State v. Hester*, No. A09–1784, 2010 WL 3000144, at *6 (Minn. Ct.

App. Aug. 3, 2010).    Plaintiff then appealed to the Minnesota Supreme Court, which granted his petition for review, and ultimately reversed his conviction.  The court held that:

> the Lower Sioux did not comply in substance with section 626.91, subdivision 2(a)(2), which required the Lower Sioux to have the correct liability insurance limits at the time Hester was arrested. Because the Lower Sioux had not satisfied the requirements of Minn. Stat. § 626.91, subd. 2(a), the Lower Sioux officer who asked Hester to submit to a chemical test was not a "peace officer" under Minn. Stat. § 169A.03, subd. 18.  And because a "peace officer" did not ask Hester to submit to a chemical test, Hester cannot be convicted of criminal test refusal.

*Hester*, 796 N.W.2d at 336.

Shortly after his arrest on December 16, 2008, the Commissioner of Public Safety revoked Plaintiff's driver's license privileges pursuant to Minnesota's implied consent revocation law because Plaintiff refused the chemical test.  Minn. Stat. § 169A.52, subd. 3.  And, at the same time, the Commissioner cancelled Plaintiff's license because the Commissioner decided that Plaintiff's operation of a motor vehicle would be "inimical to public safety or welfare."  *See* Minn. Stat. § 171.04, subd. 1(10).  Plaintiff did not seek administrative or judicial review of either the revocation or cancellation order.

### Claims Against Other Parties in This Lawsuit

As noted above, Plaintiff brought various state and federal claims against the Lower Sioux and certain individuals in that tribe, including the President of the Lower Sioux, Gabe Prescott, as well as Redwood County and its current

chair of the Board of commissioners.   (Am. Compl. ¶¶ 10–11.)   He is also suing Officer Jonathan Meece who, as noted above, was a police officer employed by the Lower Sioux at the time of the incident.  (*Id*. ¶ 16.)  Among other things, Plaintiff alleges that these various Defendants violated Plaintiff's Minnesota and federal constitutional rights by allowing Plaintiff to be detained, arrested, chemically tested, and incarcerated without any legal basis, and by revoking his driver's license without due process of law.  (*Id*. ¶¶ 36–46.)   Plaintiff also brings a number of state tort claims against the various Defendants, including: (1) assault and battery; kidnapping and false imprisonment; (3) negligence; and (4) fraudulent concealment.  (*Id*. ¶¶ 47–77.)

### Claims against Melton, Campion, and Kopcinski

True to Plaintiff's word, in the proposed Amended Complaint he does not name the State of Minnesota as a party.   (*See* Am. Compl.)  The State Defendants support the amendment in this respect.[4]   But Plaintiff now seeks to add three parties as Defendants in their official capacities as State employees: Neil Melton, Executive Director of POST; Joan Kopcinski, the head of the Minnesota's Driver's License Division; and Michael Campion, former Commissioner of the Department of Public Safety.   (Am. Compl. ¶¶ 13–15.) Plaintiff describes these individuals as "The State of Minnesota Defendants, Dohman, Campion, Kopcinski and Melton (State of Minnesota) . . ." (collectively,

---

[4]      Accordingly, this Court recommends granting Plaintiff's motion to the extent it dismisses the State of Minnesota as a party Defendant.

the "State Defendants")  (Am. Compl. ¶ 43.)  The State Defendants oppose the addition of these individuals.

The crux of the proposed Amended Complaint is that Defendants violated Plaintiff's federal constitutional rights by allowing Plaintiff to be detained, arrested, chemically tested, and incarcerated without any legal basis, and by revoking his driver's license without due process of law:

> Defendants, acting under color of State law, deprived Hester of his rights, privileges and immunities secured by the U.S. Constitution and laws, in violation of 42 U.S.C. § 1983, and by committing acts in violation of the Fourth Amendment and Fourteenth Amendment protections against unreasonable stops, detentions, searches, seizures, and arrests, and the Fourteenth Amendment guarantees of life, liberty and property, by undertaking a stop of Hester without legal authority, placing him under arrest without legal authority, transporting him to the Redwood County jail without legal authority, all in the course and scope of their official capacity and while acting under color of State law.  The Defendants intentionally disregarded the rights and safety of Hester, negligently and intentionally disregarded State law, and negligently and intelligently failed to ensure that the Lower Sioux police officers were properly licensed, in allowing Hester to be detained, arrested, chemically tested and incarcerated without any legal basis, and in revoking his driver's license without due process of law.

(Am. Compl. ¶ 37.)   Plaintiff contends that as a direct result of Defendants' conduct, he suffered damages "in amount in excess of $75,000.00."  (Am. Compl. ¶ 35.)

The Amended Complaint alleges that the State Defendants failed to properly ensure that the officers of the Lower Sioux complied with the statutory requirements before cloaking them with the power and authority of peace officers acting on behalf of the state of Minnesota.   (Am. Compl. ¶ 43.)   To that effect,

8

Plaintiff alleges that Melton, as the Executive Director of POST, was responsible for ensuring that peace officers had the proper credentials and had sufficient liability insurance coverage to qualify as "peace officers." (Am. Compl. ¶¶ 43, 55, 65, 66.)   Plaintiff contends that the POST agency failed to keep proper insurance records, and did not perform compliance reviews to ensure proper licensing of "peace officers." (Am. Compl. ¶ 68.)   And he claims that Melton, Campion and Kopcinski committed the following violations.[5] (Am. Compl. ¶ 54.)

> [T]he Organizational Defendants knew that criminal defendants and the public did not know, or could not have reasonably discovered, the defects in the licensure of the officers of The Lower Sioux police department, including but not limited to the failure to disclose that information and the failure to collect and maintain that information.

(Am. Compl. ¶ 69.)   He alleges that the "Organizational Defendants have failed to disclose the existence of the defects in the licensure of the officers of the Lower Sioux police department." (Am. Compl. ¶ 70.)

Plaintiff's proposed federal law claim against Campion and Kopcinski includes the allegation that they revoked his driving privileges based on the unconstitutional action of the Lower Sioux officers, and that the revocation therefore deprived him of due process of law.   (Am. Compl. ¶ 37.)   Specifically as to Campion, the Amended Complaint alleges that he is "the former Minnesota Commissioner of Public Safety, the governmental agency that includes the driver's license division over which he had authority." (Am. Compl. ¶ 13.)

---

[5]      As defined in the Amended Complaint, the term "Organizational Defendants" includes "The State of Minnesota Defendants," which in turn includes Melton, Campion and Kopcinski. (Am. Compl. ¶ 43, 54.)

Plaintiff also specifically names Kopcinski, the head of Minnesota's Driver's License Division, an agency that "has control over the issuance, cancellation and other processing of driver's licenses in Minnesota." (Am. Compl. ¶ 14.)

### Claims against Dohman

Plaintiff also names Ramona Dohman, the current Minnesota Commissioner of Public Safety, as a Defendant, but he does not seek monetary damages against her. Instead, he "seeks only prospective relief as allowed by existing case law." (Doc. No. 29, Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Opp. Mem.") 4.) Specifically, Plaintiff "seeks prospective relief, seeking restoration of his driving privileges and elimination of the test refusal and license revocation based on his wrongful conviction from his driving record. It is this latter relief where Dohman remains a proper party." (*Id*. at 2.)

In his proposed Amended Complaint, Plaintiff does not allege that Defendant Dohman was personally involved in the events involved in his arrest on December 16, 2008, leading up to the current lawsuit. Dohman became the Commissioner of the Department of Public Safety in March 2011, which includes the driver's license division, four months before Plaintiff initiated this federal action. Plaintiff does not allege that Dohman was personally involved in any purportedly unconstitutional conduct relating to Plaintiff's test refusal or the revocation and cancellation of his driving privileges in January, 2009. Thus, this Court construes Plaintiff's pleading as attempting to assert only a claim for prospective injunctive relief against Defendant Dohman.

10

## DISCUSSION

### I.   Standard of Review

### A.   Motion to Amend

Except where amendment is permitted as a matter of course, under

Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the

opposing party's written consent or the court's leave [and] [t]he court should

freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The

decision whether to grant leave to amend rests in the discretion of the trial court.

*Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800

F.2d 742, 749 (8th Cir. 1986).  The amendment may be denied when it would not

withstand a motion to dismiss and is thus futile.   *DeRoche v. All Am. Bottling*

*Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (stating that a futility challenge

to a motion to amend a complaint is successful where "claims created by the

amendment would not withstand a Motion to Dismiss for failure to state a claim

upon which relief can be granted"); *see also Lunsford v. RBC Dain Rauscher,*

*Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend

is futile if the amended complaint would not survive a motion to dismiss).

To survive a motion to dismiss, a complaint must contain "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).   A complaint states a plausible claim for relief if its

"factual content . . . allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009).   Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."   *Id.* at 556.

### B.     Motion to Dismiss

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

As stated above, in deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  But in so doing, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. As stated above, a complaint states a plausible claim for relief if its "factual

content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  And although a complaint need not contain "detailed factual allegations," it must set forth specific facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Notably, in ruling on a motion to dismiss, a court may consider materials that are part of the public record or do not contradict the complaint, as well as materials necessarily embraced by the pleadings, such as the case history summary and documents from Plaintiff's criminal case and administrative proceedings that are attached to the Zawislak and Kopcinski Affidavits, without converting the motion to one for summary judgment.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Stahl v. United States Dep't of Agric.*, 327 F.3d 698, 700 (8th Cir. 2003) (same).

## II.    Analysis

### A.    Plaintiff's Proposed § 1983 Claims for Damages Against Campion, Kopcinski, and Melton

To successfully plead a § 1983 civil-rights cause of action for damages against a state officer, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendants violated the complainant's federal constitutional rights while acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988). And "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"  protected by the Constitution.

13

*Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).   Thus, a plaintiff must plead facts demonstrating a defendant's personal involvement in alleged constitutional wrongdoing.  *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil-rights claims because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim").  "[W]e do not require that personal capacity claims be clearly-pleaded simply to ensure adequate notice to defendants.  We also strictly enforce this pleading requirement because '[t]he Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees.'"  *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997) (quoting *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)).  Because state government entities, including state officials, are not "persons" under § 1983 for purposes of suits for damages or other retroactive relief, they cannot be sued for damages thereunder for official acts.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

When individual liability is imposed, it is imposed against the supervisory official in her individual capacity for her own culpable action or inaction in violation of a person's constitutional right.  *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987).  Individual capacity suits generally allege that a government official is individually liable for the deprivation of a federal right as a result of

actions taken outside the scope of his official duties, but under color of law.

*Hafer v. Melo*, 502 U.S. 21, 25 (1991).  In contrast, official liability depends on

enforcement by individuals of a municipal or state policy, practice, or decision of

a policymaker that causes the violation of the plaintiff's constitutional rights.   *See*

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).   As the Eighth

Circuit has explained:  "Generally, individual-capacity suits involve actions taken

by governmental agents outside the scope of their official duties.  Official-

capacity suits typically involve either allegedly unconstitutional state polices or

unconstitutional actions taken by state agents possessing final authority over a

particular decision."  *Nix*, 879 F.2d at 431.

Here, Plaintiff's proposed Amended Complaint does not indicate whether

he intends to sue Campion, Kopcinski, and Melton in their individual or official

capacities.   This deficiency cannot be cured by simply allowing Plaintiff to add

the words "individual capacity" to the Complaint.  The problem here is that the

allegations against these Defendants, even if accepted as factually true, do not

state a claim that they individually violated Plaintiff's constitutional rights.  *See,*

*e.g., Iqbal*, 129 S. Ct. at 1948 (explaining that a plaintiff "must plead that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution").

### a.    Proposed Claims against Campion and Kopcinski

The proposed Amended Complaint alleges that Campion "is the former

Minnesota Commissioner of Public Safety, the governmental agency that

includes the driver's license division over which he had authority" and that Kopcinski "is, and has been at all times material, the head of the Driver's License Division of the State of Minnesota and in that capacity has control over the issuance, cancellation and other processing of driver's licenses in Minnesota." (Am. Compl. ¶ 14.)   Plaintiff thus alleges that:  (1) Campion and Kopcinski were public officials responsible for license cancellations or revocations; (2) his license was wrongfully revoked under state law; and (3) this wrongful revocation amounted to a constitutional violation of his due process or other rights.   (Am. Compl. ¶¶ 35, 37.)

Personal involvement of the named defendant is an essential element of any § 1983 claim because the doctrine of *respondeat superior* does not apply to actions brought under § 1983.   *See Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992).  The proposed Defendants' official titles notwithstanding, to be liable under § 1983, they must have participated or acquiesced in Plaintiff's alleged constitutional deprivations.   *Iqbal*, 129 S.Ct. at 1949 (stating that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").   Here, Plaintiff's proposed Amended Complaint contains no allegations of acts or omissions committed by these individuals that caused the alleged constitutional violation.   There are simply no facts to support personal involvement of either Campion or Kopcinski.  *See Thomas v. St. Louis Bd. of Police Comm'rs*, No. 03-1114, 2007 WL 475263, at *5 (E.D. Mo. Feb. 9, 2007) (dismissing counts against individual Board members where "Plaintiff has come

forward with no evidence that either Saracino or Slay had any personal or direct involvement in the events giving rise to her claims").

Indeed, the facts make clear that neither Campion nor Kopcinski took any action relating to Plaintiff's license.   On January 5, 2009, the DPS's computer simply applied the statutory rules of license cancellation and revocation to the facts identified in the notice provided to it and revoked the license pursuant to the Commissioner's delegated authority and cancelled his driving privileges.   (Doc. No. 22, Aff. of Joan Kopcinski ("Kopcinski Aff.) ¶ 3, Exs. 1, 2; Doc. No. 9, Aff. of Francis P. Zawislak ("Zawislak Aff.") ¶ 5, Exs. 1, 2.)   Notably, while Plaintiff appears to contend that his license was unlawfully revoked in light of the Minnesota Supreme Court's reversal of his criminal conviction for refusing a sobriety test, that reversal took place in March 2011, well after the 2009 license revocation at issue.   Ultimately, the factual allegations pled by Plaintiff "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950.   As such, Plaintiff "has not show[n] that the pleader is entitled to relief" and amendment to add his proposed claims against Campion and Kopcinski would be futile. *Id*.  (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).

### b.    Proposed Claims Against Melton

Plaintiff fares no better with his federal constitutional claims against Melton.   At most, all that is pled against Melton is that he headed an agency that was negligent in carrying out its tasks with respect to the requirement that the

17

Lower Sioux tribe carry a certain minimum level of liability insurance for its police officers who would be providing law enforcement services in Redwood County under the Aid and Assistance Agreement.  There is no factual allegation that Melton engaged in the constitutional misconduct of violating Plaintiff's right to be free of reasonable searches and seizures or that Melton deprived Plaintiff of procedural due process.   Again, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.   The agency's failure to ensure that the Lower Sioux filed a certification setting forth the required amount of insurance does not form an adequate foundation for a plausible claim that Melton engaged in constitutional misconduct by violating Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments.  This fact does not "plausibly suggest an entitlement to [§ 1983] relief."   *Id*. at 1951.

### 3.    Whether Campion, Kopcinski, and Melton are Entitled to Qualified Immunity

Defendants also oppose the proposed claims against  Campion, Kopcinski, and Melton on the grounds of qualified immunity.  Qualified immunity "shields Government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights."  *Iqbal*, 129 S. Ct. at 1945 (internal quotations omitted); *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).  Qualified immunity is not just immunity from liability, but also "immunity from suit," from the burdens of having to defend the litigation.  *Mitchell v. Forsyth*,

472 U.S. 511, 526 (1985).

In *Iqbal*, the Supreme Court observed that "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." 129 S. Ct. at 1946. Further, the Supreme Court stated that "the sufficiency of [a plaintiff's] pleadings is both inextricably intertwined with . . . and directly implicated by . . . the qualified immunity defense." *Id.* at 1946–47 (citations and quotations omitted). Thus, to withstand the qualified immunity defense, Plaintiff must plead sufficient factual matter to show that Campion, Kopcinski, and Melton personally took action that deprived Plaintiff of a clearly established constitutional right. This he cannot do.

As discussed above, Plaintiff has failed to sufficiently plead that these proposed Defendants took any action that violated Plaintiff's clearly established rights. Plaintiff's proposed pleading is void of factual content about Melton, Kopcinski, and Campion's personal involvement in any events that purportedly violated his constitutional rights. Further, Plaintiff has not alleged any facts to suggest that these officials had any reason to suspect that they were violating Plaintiff's rights. For example, Plaintiff does not allege that Campion, Melton or Kopcinski knew or should have known that the peace officers involved in arresting him and certifying that he refused to take the chemical test for intoxication were not "peace officers" under Minn. Stat. § 169A.03. There is no plausible allegation that these Defendants purposefully adopted a policy of

having drivers arrested in violation of their constitutional right to be free from unreasonable seizure.

Beyond that, a plaintiff must offer "particularized" allegations of defendant's violation of a clearly established constitutional right.  Although Plaintiff's criminal conviction for test refusal was reversed because the Lower Sioux officers were not adequately insured to be "peace officers" as defined in Minnesota state law for purposes of defining who could administer the chemical test, this does not mean that Plaintiff's constitutional rights were violated.  Plaintiff had no clearly established constitutional right that he could assert to be arrested by a police officer who was covered by a minimum level of liability insurance.  And there was no clearly established constitutional right violated in connection with the driver's license revocation for refusal to take the chemical test.  Although Plaintiff's driver's license was automatically revoked under Minnesota's implied consent law, Plaintiff had an opportunity, which he did not take advantage of, to have judicial review of the revocation decision with the procedural safeguards described in Minn. Stat. § 169A.53 subd. 3.  He has no claim that his Fourteenth Amendment due process rights were violated.  In sum, because the proposed Amended Complaint contains no factual content regarding their personal involvement in any violation of Plaintiff's clearly established rights, the amendment should be denied as futile on the basis of qualified immunity.

**B.     Plaintiff's Proposed Claims for Prospective Injunctive Relief against Kopcinski and Dohman**

While unclear on the face of Plaintiff's proposed Amended Complaint, this Court construes Plaintiff's pleading to seek injunctions against Kopcinski and Dohman to restore his driving privileges, and to prohibit any state official from using the overturned criminal conviction for test refusal for sentence enhancement purposes in the future.   As described above, Melton is the Executive Director of POST, and in that capacity oversees the licensing of peace officers.  The Amended Complaint does not allege any facts to suggest that he has the power or authority over any matters related to the issuance, cancellation, or any other processing of driver's licenses in Minnesota or enhancing criminal convictions.   And Campion is no longer the Minnesota Commissioner of Public Safety; he was replaced by Mona Dohman in March 2011.   As such, the only officials subject to any potential injunctive relief claims are Kopcinski and Dohman.

**1.     Restoring Driving Privileges**

Plaintiff constructed the following argument to support his claim for an injunction that would require Defendants Dohman and Kopcinski to restore his driving license and to remove the revocation from his record.  Pursuant to Minnesota's implied consent law, Plaintiff's driver's license was automatically revoked in January 2009, shortly after he refused to take the chemical test for

sobriety when he was arrested on December 16, 2008, by the Lower Sioux tribal officers.  Minnesota's implied consent law requires license revocation upon the certification by a "peace officer" to the Commissioner of Public Safety that there existed probable cause to believe the person had been driving while impaired and had refused to take the test.  Minn. Stat. § 169A.52, subd. 3.  Here, Plaintiff argues, his license should not have been revoked because, as the Minnesota Supreme Court ultimately found, the Lower Sioux officers were not duly licensed peace officers under Minnesota law because they were inadequately insured.  Plaintiff says that despite the allegedly improper revocation of his license he now has no way to reverse the revocation, and get his driving privileges restored in the State of Minnesota.  Although Minnesota's implied consent revocation law provided an opportunity to petition for a judicial review of the revocation, the petition had to be filed within thirty days of the notice of revocation and the Minnesota Supreme Court's decision reversing the criminal conviction for test refusal did not occur until 2011, long after the implied consent revocation Order of January 5, 2009.  But, Plaintiff argues, it was not until 2011 that the basis for the rescission of the license revocation—the fact that the test refusal was not certified by a peace officer—could have been determined because it was only then that the Minnesota Supreme Court reversed the criminal conviction for test refusal on the ground that the Lower Sioux officer was not a "peace officer" under Minnesota law.  Now, Plaintiff contends, this federal court should intervene and use its equitable power to restore Plaintiff's driving privilege because Plaintiff's

inability to utilize any State of Minnesota administrative or judicial procedure to obtain restoration constitutes an ongoing constitutional violation of Plaintiff's right to due process.

There are several reasons why this claim for injunctive relief against Defendant Dohman is futile.  First, Plaintiff's argument ignores the fact that his license was not just "revoked" on January 5, 2009, it was also "cancelled" at that time.  "Cancellation" of a license in Minnesota is governed by a different statute than Minnesota's implied consent "revocation" law.   Unlike implied consent revocation, license cancellation is not an automatic consequence of the filing of a certification by a peace officer that there has been a test refusal.   The cancellation statute, Minn. Stat. § 171.14, provides that:

> The commissioner may cancel any driver's license upon determination that (1) the licensee was not entitled to the issuance of the license, (2) the licensee failed to give the required or correct information in the application, (3) the licensee committed any fraud or deceit in making the application, or (4) the person, at the time of the cancellation, would not have been entitled to receive a license under section 171.04.

Minn. Stat. § 171.14(a).   Minn. Stat. § 171.04 in turn sets forth categories of "persons not eligible for drivers' licenses."   Under § 171.04, a person is not eligible for a driver's license, "when the commissioner has good cause to believe that the operation of a motor vehicle on the highways by the person would be inimical to public safety or welfare."   Minn. Stat. § 171.04, subd. 1(10).

The public record shows that in 2008 Plaintiff, in order to obtain a reinstatement of his driving privileges which had previously been revoked, entered into an abstinence agreement with the Minnesota Department of Public Safety in which he specifically acknowledged "that the Commissioner of the Minnesota Department of Public Safety will cancel and deny my privilege to drive if there is sufficient cause to believe that, after the abstinence date attested to above, I have consumed any drink or product containing alcohol or controlled substances." (Doc. No. 22, Kopcinski Aff. ¶ 3 and Ex. 1.) The Amended Complaint in this case acknowledges that on December 16, 2008, when he was initially detained at the roadside he "failed the preliminary breath test." (Am. Compl. ¶ 24.) The license cancellation notice provided, pursuant to Minn. Stat. § 171.04, that Plaintiff's license was cancelled because Plaintiff's operation of a motor vehicle would be inimical to public safety or welfare. (Zawislak Aff, Ex. 2.)

The cancellation of Plaintiff's license was thus not dependent upon the certification by a licensed peace officer that Plaintiff refused to take the chemical sobriety test. Rather, it was triggered by the Commissioner's good cause belief that Plaintiff's operation of a motor vehicle would be inimical to public safety or welfare. And there is nothing in Minnesota's cancellation law that limits the Commissioner to only considering information from licensed peace officers in arriving at that conclusion. Indeed, even evidence of drinking that is illegally obtained by the police that would be excluded in a criminal trial may properly be considered by the Commissioner in deciding whether to cancel and deny a

license under Minn. Stat. § 171.19 to a licensee who has violated a condition of his licensure by consuming alcohol.   *See Ascher v. Comm'r of Pub. Safety*, 527 N.W.2d 122, 126 (Minn. Ct. App. 1995).  If Plaintiff did have grounds to contest the cancellation—if for example he wanted to claim that he had not been drinking alcohol on December 16, 2008 and there was thus no good cause to believe that his driving would be inimical to public safety—he should have either requested administrative review or, as was his statutory right, petitioned for judicial review for reinstatement of his driver's license within 180 days of the January 5, 2009 cancellation.  Minn. Stat. § 171.19.  Plaintiff did not have to wait until the Minnesota Supreme Court reversed his test refusal criminal conviction to bring such a petition for review of the cancellation decision because the certification of test refusal from a licensed "peace officer" was not a requirement for cancellation.

As a result of the fact that there was a cancellation of Plaintiff's driver's license separate and apart from revocation, Plaintiff's claim for an injunction to restore his driving privileges is futile and does not state a claim for relief.  Plaintiff has not shown how he is suffering any ongoing harm of a constitutional nature: his driving privileges cannot be restored so long as his license remains withdrawn as a result of the cancellation.  Plaintiff has no due process claim that would entitle him to injunctive relief because he had an adequate opportunity to contest the cancellation of his license through state court judicial review of the

Commissioner's decision that it was inimical to public safety to grant Plaintiff a license, an opportunity that Plaintiff did not pursue.

The second reason why Plaintiff's claim for injunctive relief to restore his driving privilege is futile is that Plaintiff has not been denied due process in connection with his license revocation. When Plaintiff's license was revoked on January 5, 2009, he was notified that the basis for the revocation was his test refusal on December 16, 2008. (Zawislak Aff. Ex. 1.) He was also notified that he had the right to have the revocation administratively reviewed or to petition the state court in Redwood County for judicial review of the implied consent revocation within thirty days. (*Id*.); *See* Minn. Stat. § 169A.53, subd. 2(a). Plaintiff could have raised, at that time, the issue that he did not refuse a validly ordered chemical test from a licensed, fully insured peace office; he did not have to wait until the Minnesota Supreme Court reversed his conviction in the criminal case. Indeed, one of the specific issues that could have been raised by Plaintiff on judicial review was whether the "peace officer" had probable cause to believe that Plaintiff was driving while impaired. *See* Minn. Stat. § 169A.53, subd. 3(b)(1). This obviously gave Plaintiff the opportunity to raise the issue of whether the Lower Sioux officer did not qualify as a peace officer and whether the license revocation should thus have been rescinded.

Having foregone the opportunity to seek judicial review of the implied consent revocation in Minnesota state court or in a state administrative proceeding, Plaintiff is not now entitled to equitable relief in federal court that

26

would involve this Court assuming the role of state agency weighing in on the reinstatement of Plaintiff's driver's license.  Not only would this run counter to the limited role that the federal courts should play in such matters of equity, it would also violate the general rule giving preclusive effect to administrative decisions, in this case the implied consent revocation decision.  *Olson v. Morris*, 188 F.3d 1083 (9th Cir. 1999) (decision of state psychology board entitled to *res judicata* effect on claims under sections 1983 and 1985); *Mason v. Arizona*, 260 F.Supp.2d 807, 824–26 (D. Ariz. 2003) (decision of state chiropractic board entitled to *res judicata* effect on § 1983 claim).  Since Plaintiff did not seek judicial review of the revocation, the order revoking his driving privileges was a final decision in a civil administrative proceeding entitled to *res judicata* effect. When a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties possess an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect as entitled to in that state's courts.  *University of Tennessee v. Elliot*, 478 U.S. 788, 799 (1986) (holding that administrative findings precluded civil rights claims but not Title VII claim).  This collateral estoppel serves "the parties' interest in avoiding the cost and vexation of repetitive litigation, and the public's interest in conserving judicial resources."  *Id.* at 798.  It also serves the value of federalism.  *Id.* at 798-99. Thus the revocation order cannot now be reviewed in a federal court injunction proceeding.

Finally, Plaintiff's bid to restore his driving privileges is futile because there are no factual allegations that Defendants are violating Plaintiff's constitutional rights by executing a policy or custom adopted by the State of Minnesota.[6]  *See Hafer*, 502 U.S. at 25 (stating that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law") (internal citations and quotations omitted); *Grayson v. Ross*, 454 F.3d 802, 810–11 (8th Cir. 2006) (same).   Aside from Plaintiff's conclusory allegations, there are no allegations in the proposed Amended Complaint to suggest that Plaintiff's constitutional rights are being violated by Defendants' execution of a policy or custom adopted by the State of Minnesota.  *See Ahmed v. Fenesis*, No. 05-2388 (JRT/FLN), 2007 WL 2746842, at *8 (D. Minn. Sept. 19, 2007) (stating that "even if Plaintiff could identify some still viable request for injunctive relief, his official capacity claims against Defendants would still have to be summarily dismissed, because there are no allegations or evidence in the record, which suggest that Defendants are violating Plaintiff's constitutional rights by executing a policy or custom adopted by the State of Minnesota").   Accordingly, Plaintiff fails to state an actionable claim for injunctive relief to reinstate his driving privileges against Defendants Kopcinski and Dohman.

---

[6]      As discussed above, this Court already concluded that Defendants are being sued in their official capacities.  Thus, the relevant standard is whether Defendants are violating Plaintiff's constitutional rights by enforcing a policy adopted by the State of Minnesota.

###### 2.    Prohibiting State Officials from Using the Overturned Criminal Conviction for Test Refusal for Future Sentence Enhancement Purposes

Plaintiff fares no better with his claim for injunctive relief to prohibit any state official from using the overturned criminal conviction for test refusal for future sentence enhancement purposes.   First, this Court concludes that Plaintiff lacks standing for injunctive relief because he has not shown any real or immediate threat of future harm.   *See Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000) ("In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm.").   At best, what Plaintiff alleges is some type of past injury.   But the allegations underlying future harm related to the use of Plaintiff's overturned conviction are too speculative and remote for him to assert claims for injunctive relief.   Attempting to anticipate whether Plaintiff actually commits a crime in the future and whether the overturned test refusal conviction is used for future sentence-enhancement purposes would lead "into the area of speculation and conjecture."   *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without

any provocation or resistance on his part.").   In sum, Plaintiff cannot state a claim for injunctive relief prohibiting state officials from using the overturned test refusal conviction in future sentences.

### C.   Plaintiff's State Law Claims against Campion, Kopcinski, Melton, and Dohman

The Eleventh Amendment bars all suits brought in federal court against a state, its agencies, and its officers acting in their official capacities, regardless of relief sought, when the claims are based on violations of state law.   *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 n.4 (8th Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).   As discussed above, this Court found that Plaintiff has sued the State Defendants in their official capacities only.   Plaintiff's claims against these Defendants are barred by the Eleventh Amendment, which prohibits federal courts from hearing suits against state officers in their official capacities where, as here, Plaintiff's state law claims against the State Defendants allege various violations of state law—regardless of whether Plaintiff is seeking money damages or injunctive relief.   *Rakow v. N. D. ex rel. State Bd. of Higher Educ.*, No. 98-3503, 2000 WL 227850, at *1 (8th Cir. 2000) (citing *Pennhurst*, 465 U.S. at 106).

"But even if any state-law claims could survive other hurdles, plaintiff[] do[es] not provide any reason to suppose that the Court would have original jurisdiction over such claims."   *Pyron v. Ludeman*, No. 10-4236 (PJS/JJG), 2011 WL 3290365, at *2 (D. Minn. Jul. 29, 2011) (internal citation omitted).   Indeed,

"[i]t would be pointless to permit plaintiff[] to amend [his] complaint to assert claims over which the Court would have only supplemental jurisdiction when the claims over which the Court has original jurisdiction have already been dismissed." *Id.*; *see also Jenkins v. Hennepin Cnty.*, No. 06-3625 (RHK/AJB), 2007 WL 2287840, at *8 (D. Minn. Aug. 3, 2007) (stating that "[w]hen a district court dismisses a claim over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state law claims that are related to that federal claim" and dismissing state law claim against the state defendants) (citing 28 U.S.C. § 1367(c)(3) and *ACLU v. City of Florissant*, 186 F.3d 1095, 1098–99 (8th Cir. 1999)).   Because this Court concludes that Plaintiff cannot state any federal claims against Campion, Kopcinski, Melton, and Dohman, it recommends that the Court decline the exercise of supplemental jurisdiction over his state law claims.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion to Amend Complaint (Doc. No. 12), be **GRANTED IN PART** and **DENIED IN PART** as follows.  The motion should be granted to the extent it dismisses the State of Minnesota as a party in this action, and should be otherwise denied;

2.      Defendants' Motion to Dismiss Defendant Ramona Dohman (Doc. No. 2), be **GRANTED**; and

3.      Plaintiff be granted leave to file a new version of the Amended

Complaint in conformity with the Court's Order.

Dated:   January 24, 2012

                                        *s/ Jeffrey J. Keyes*
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**February 7, 2012** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C.
§ 636 to review a transcript of the hearing in order to resolve all objections made
to this Report and Recommendation, the party making the objections shall timely
order and file a complete transcript of the hearing within **ten days** of receipt of
the Report.