UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brian Noel Hester,

      Plaintiff,

  v.

Redwood County; Lon W. Walling, individually and in his official capacity as Chair of the Redwood County Board of Commissioners; Steven Collins, individually and in his official capacity as Redwood County Attorney; the State of Minnesota; Mona Dohman, individually and in her official capacity as Commissioner of the Minnesota Department of Public Safety; The Lower Sioux Indian Community of Minnesota; Gabe Prescott, individually and in his capacity as President of the Lower Sioux Indian Community of Minnesota; Jonathan Meece, individually and in his capacity as a police officer for the Lower Sioux Indian Community of Minnesota;

      Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 11-1690 ADM/JJK

_____

Allen P. Eskens, Esq., Eskens, Gibson & Behm Law Firm, Chtd, Mankato, MN, and Kenneth R. White, Esq., Law Office of Kenneth R. White, PC, Mankato, MN, on behalf of Plaintiff Brian Noel Hester.

Jon K. Iverson, Esq., and Amanda L. Stubson, Esq., Iverson Reuvers, LLC, Bloomington, MN, on behalf of Defendants Redwood County, Lon W. Walling, and Steven Collins.

Gary R. Cunningham, Esq., Minnesota Attorney General's Office, St. Paul, MN, on behalf of Defendants the State of Minnesota and Mona Dohman.

John E. Jacobson, Esq., Joseph F. Halloran, Esq., Mary B. Magnuson, Esq., and Sarah K. Van Norman, Esq., Jacobson, Buffalo, Magnuson, Anderson & Hogen, Ltd., St. Paul, MN, and R. Reid LeBeau, II, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, on behalf of Defendants The Lower Sioux Indian Community of Minnesota, Gabe Prescott, and Jonathan

Meece.

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Brian Noel Hester's ("Hester") Objections [Docket No. 34] to Magistrate Judge Jeffrey J. Keyes' Amended Report and Recommendation [Docket No. 33] ("Amended R&R") filed on January 24, 2012. Judge Keyes' Amended R&R recommended granting in part and denying in part Hester's Motion to Amend [Docket No. 12] and granting Defendants State of Minnesota and Mona Dohman's Motion to Dismiss [Docket No. 2]. For the reasons stated below, Hester's Objections are overruled and Judge Keyes' Amended R&R is adopted.

## II. BACKGROUND

The factual and procedural history of this dispute are set forth in Judge Keyes' Amended R&R and are incorporated by reference. Accordingly, an abridged version of the relevant facts is presented below.

### A. Procedural Background

On June 27, 2011, Hester filed his Complaint [Docket No. 1] in this suit, alleging claims of § 1983 violations, failure to comply with state law, assault and battery, kidnapping and false imprisonment, negligence, vicarious liability, and fraudulent concealment. Id. The State Defendants moved to dismiss on July 18, 2011, and Plaintiff moved to amend the Complaint on September 2, 2011, seeking to dismiss the claims against the State of Minnesota, to add claims against Patrick R. Rohland, Michael W. Campion, Neil Melton, Joan Kopcinski, and Jean Stacy. See Hester's Mot. to Amend. The Motion to Dismiss and the Motion to Amend were referred to Judge Keyes for a consolidated Report and Recommendation. On December 19, 2011, Judge

Keyes held a hearing on the State Defendants' Motion to Dismiss. Judge Keyes' Amended R&R recommends granting Hester's Motion to Amend insofar as it dismisses the State of Minnesota as a Defendant. See Amended R&R 31. The Amended R&R also recommends granting the Motion to Dismiss as it pertains to Mona Dohman ("Dohman") and grants Hester leave to file a new Amended Complaint. Id. 31–32.

### B. Factual Background[1]

Hester is a resident of Redwood County, Minnesota, and enrolled as a member of the Defendant Lower Sioux Community of Minnesota ("Lower Sioux "), a federally recognized tribe of American Indians. Mot. to Amend Ex. 1 ("Amended Complaint") ¶¶ 9–10. Defendant Gabe Prescott ("Prescott") is the current President of Lower Sioux, having replaced Jean Stacy ("Stacy"). Id. ¶ 10. Defendant Lon Walling ("Walling") is the current chair of the Redwood County Board of Commissioners. Id. ¶ 11. Patrick R. Rohland ("Rohland") was the Redwood County Attorney during the relevant events, and Defendant Steven Collins ("Collins") is the current Redwood County Attorney. Id. ¶ 11. Defendant Dohman is the current Minnesota Commissioner of the Department of Public Safety ("DPS"), the department supervising the regulation of driver's licenses, and Defendant Michael Campion ("Campion") is the former Minnesota DPS Commissioner. Id. ¶¶ 12–13. Defendant Joan Kopcinski ("Kopcinski") is the head of the Minnesota Drivers' License Division, and Defendant Neil Melton ("Melton") is the Executive Director of the Minnesota Board of Peace Officer Standards and Training ("POST"). Id. ¶¶ 14–15. Jonathan Meece ("Meece") is a police officer employed by Lower Sioux. Id. ¶ 16.

---

[1] In considering State Defendants' Motions to Dismiss, the Court takes the facts alleged in Plaintiff's Complaint to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Defendants Dohman, Melton, Kopcinski, and Campion are referred to collectively as the "State Defendants."

Hester's federal claims arise from a December 16, 2008 incident where Hester was detained and arrested by Lower Sioux tribal officers in Redwood County, Minnesota, for refusing a sobriety test and driving while impaired. The Lower Sioux tribal officers were operating in Redwood County under the auspices of a July 9, 1998 Mutual Aid and Assistance Agreement ("MAA Agreement") which permitted the tribe to "share concurrent jurisdiction with the County over persons in the geographical boundaries of property held by the United States in trust" for the tribe, as long as Lower Sioux satisfied "certain statutorily defined requirements."[2] Id. ¶ 20. The MAA Agreement also stated that each party agreed to assist the other to the extent each was "reasonably able in the event of an emergency situation". Id.

On December 16, 2008, Lower Sioux tribal officers responded to a report of a motorist in need[3] and discovered Hester outside of his vehicle which was stuck in a roadside ditch. Am. Compl. ¶¶ 22–23. Suspecting Hester was intoxicated, the tribal officers administered a preliminary breath test, which Hester failed. Id. ¶¶ 23–24. The tribal officers then arrested Hester for driving while intoxicated and transported him to Redwood County Jail. Id. ¶ 25.

---

[2]The relevant statutorily defined requirements were compliance with Minn Stat. §§ 466.04 and 626.91, subd. 2(a)(2). Minn. Stat. § 466.04 requires that Lower Sioux file with Peace Officer Standards and Training a bond or certificate of insurance for liability coverage with a maximum single occurrence amount of $1.2 million. Minn. Stat. § 466.04, subd. 1(a)(6). Under Minn. Stat. § 626.91, subd. 2(a)(2), the tribe was required to have an annual cap of $3.6 million for all occurrences within a year. During the relevant time period of January 1, 2008, to June 30, 2009, Lower Sioux's liability insurance was only $3 million, $600,000 less than was statutorily required. State v. Hester, 796 N.W.2d 328, 334 (Minn. 2011).

[3]The temperature was ten to fifteen degrees below zero, and the roads were icy. See State v. Hester, 796 N.W.2d at 330.

Hester refused to undergo further chemical testing at the jail.  Id. ¶ 26.  The State charged Hester with first-degree driving while impaired, which was dismissed before trial, and first-degree test refusal in violation of Minn. Stat. §§ 169A.20, subd. 2, and 169A.24, subd. 1(1).  After a jury trial, Hester was found guilty of test refusal.  Am. Compl. ¶ 27.

Hester then filed post-trial motions arguing that the Lower Sioux tribal officers were not "peace officers" under Minn. Stat. § 169A.03, subd. 18, because Lower Sioux was not in compliance with the liability insurance requirements of Minn. Stat. § 626.91.  Because only police officers who satisfy the definition of "peace officer" under Minn. Stat. § 169A.03 are authorized to administer preliminary breath tests and to give the implied consent advisory, Hester contended that the Lower Sioux tribal officers were not legitimate "peace officers" and therefore that their actions were unlawful.  The district court denied the post-trial motions, finding that the Lower Sioux tribal officers satisfied the definition of a peace officer and that Lower Sioux had substantially complied with the Minn. Stat. § 626.91 requirements.  State v. Hester, 796 N.W.2d at 330.  Hester appealed, and the Minnesota Court of Appeals affirmed the district court's decision.  State v. Hester, No. A09-1784, 2010 WL 3000144, at *6 (Minn. Ct. App. Aug. 3, 2010).  Hester then filed an appeal to the Minnesota Supreme Court, which reversed his conviction, finding that Lower Sioux was not in substantial compliance, the Lower Sioux tribal officers were not "peace officers" for the purpose of Minn. Stat. § 169A.03, that their demand for a chemical test was therefore invalid, and that Hester could not be convicted of criminal test refusal.  State v. Hester, 796 N.W.2d at 336.

After his December arrest, Hester's driver's license privileges were revoked by the DPS Commissioner under Minnesota's implied consent revocation law, Minn. Stat. § 169A.52, subd.

3, for Hester's refusal of the chemical test. The DPS Commissioner also cancelled Hester's license on the determination that Hester's operation of an automobile would be "inimical to public safety or welfare." See Minn. Stat. § 171.04, subd. 1(10). Hester did not seek administrative or judicial review of either the cancellation or revocation orders.

### III.  DISCUSSION

#### A.  Standards of Review

##### 1.  Motion to Dismiss

A motion to dismiss a complaint for failure to state a claim is governed by Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true. See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss, a court may consider facts in the public record and materials necessarily embraced by the pleadings without converting the motion to one for summary judgment. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

### 2. Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend its pleading, except where otherwise permitted, "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," id., but the decision to grant leave rests in the court's discretion. Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986). Leave to amend, however, is properly denied where amendment is futile. See Zutz v. Nelson, 601 F.3d 842, 850–52 (8th Cir. 2010). Amendment is futile where the proposed amended complaint fails to state a claim under Rule 12(b)(6) analysis. Id. at 850.

### B. Analysis

Defendants Dohman and the State of Minnesota move for dismissal, claiming that the causes of action brought against the State are barred by the Eleventh Amendment, the official capacity claims against Dohman warrant dismissal because she does not have authority over POST, and the claims against Dohman as an individual include no allegations of personal

involvement and should also be dismissed. Hester's proposed Amended Complaint does not include the State of Minnesota, in apparent recognition of its immunity under the Eleventh Amendment. Accordingly, the State of Minnesota is dismissed. The remaining claims brought against Dohman in her official capacity only, as well as Hester's 42 U.S.C. § 1983 claims against Campion, Kopcinski, and Melton proposed in his Amended Complaint, are discussed further below.

### 1. § 1983 Claims Against Campion, Kopcinski, and Melton

Hester's proposed Amended Complaint alleges that Campion, Kopcinski, and Melton violated 42 U.S.C. § 1983 and deprived him of his constitutional rights under the Fourth and Fourteenth Amendment. A § 1983 claim against state officers must allege a set of facts which, if proven true, demonstrate that the officers violated the plaintiff's constitutional rights while acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). "To establish personal liability of the supervisory defendants [in a § 1983 case, the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006) (internal quotations and citations omitted). Plaintiffs, therefore, must plead facts demonstrating a defendant's personal involvement in the alleged § 1983 violation. See Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999). "The Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees," so this pleading requirement is strictly enforced. Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Suits against state officials in their official capacity are against the official's office rather than the official personally. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Individual liability for a government

official is only imposed when, in her individual capacity, that official acts or refrains from acting and violates a person's constitutional right. Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987). "Generally, individual-capacity suits involve actions taken by governmental agents outside the scope of their official duties. Official-capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision." Nix, 879 F.2d at 431.

Hester's proposed Amended Complaint does not specify whether Campion, Kopcinski, and Melton are being sued in their individual or official capacities. Because Hester has not expressly pled claims against them in their individual capacity, and because the alleged facts do not state a claim of individual involvement in the alleged violations, the claims will be considered as suing Melton, Kopcinski, and Campion in their official capacity.

### a. Lack of Personal Involvement

A defendant's personal involvement, not just the official title of their position, is essential in a § 1983 claim because respondeat superior is unavailable under § 1983. See Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992). No facts are alleged to support any personal involvement by Campion or Kopcinski. On January 5, 2009, DPS cancelled and revoked Hester's license, more than two years before the Minnesota Supreme Court reversal on the revocation issue. Kopcinski Aff. [Docket No. 22]; Zawislak Aff. [Docket No. 9] Exs. 1, 2. No facts allege that either Campion or Kopcinski were personally involved, and as such, the factual allegations "do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950. Therefore, the Motion to Amend the Complaint to include Kopcinski and Campion is denied.

Hester's claims against Melton similarly fail because, at most, the claims allege that Melton was negligent as Executive Director of POST in assuring that Lower Sioux carried the minimum level of liability insurance. No facts are alleged that Melton was individually involved in violating Hester's Fourth Amendment right to be free from unreasonable searches and seizures or his Fourteenth Amendment procedural due process rights. The allegation that the POST agency failed to ensure that Lower Sioux met the requirements of Minn. Stat. § 466.04 does not "plausibly suggest an entitlement to [§ 1983] relief," and so the Motion to Amend the Complaint to include Melton is denied on this basis.

### b. Qualified Immunity

Qualified immunity shields a government official from civil suit except where the conduct violates a clearly established right of which a reasonable person would have known. See Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). Qualified immunity protects mistaken judgments and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity is more than just immunity from liability; it is also "immunity from suit," from the burdens of defending against litigation. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Where a complaint fails to "state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Id. "[T]he sufficiency of [a plaintiff's] pleadings is both inextricably intertwined with . . . and directly implicated by . . . the qualified immunity defense." Iqbal, 129 S. Ct. at 1946–47 (citations and quotations omitted).

Hester has failed to plead facts showing Campion, Melton, and Kopcinski personally

acted to deprive him of a clearly established constitutional right. The proposed Amended Complaint mentions no facts about their personal involvement or that they knew or should have known that the peace officers involved in Hester's chemical test were not "peace officers" under Minn. Stat. § 169A.03. Additionally, the Amended Complaint makes no particularized allegations of Defendants' violation of a clearly established constitutional right. The failure of the Lower Sioux tribal officers to be adequately insured did not violate Hester's constitutional rights, as there is no clearly established constitutional right to be free of arrest or testing by police officers covered by a minimum level of liability insurance. Hester's procedural due process rights were also not violated because he failed to avail himself of the administrative review process permitted in Minn. Stat. § 169A.53, subd. 3. Because no clearly established constitutional right was violated, qualified immunity bars Hester's claims against these Defendants. Accordingly, the Motion to Amend the Complaint to include Campion, Melton, and Kopcinski is also dismissed on the basis of qualified immunity.

### 2. Proposed Injunctive Relief Claims Against Kopcinski and Dohman

Hester's proposed Amended Complaint seeks prospective injunctive relief from only Defendants Kopcinski and Dohman. Campion is no longer the DPS Commissioner, so no prospective injunctive relief claims can be alleged against him. Melton is the Executive Director of POST, and no facts are alleged to suggest that in his capacity Melton has the power to control driver's license decisions. Therefore, the injunctive relief will only be considered as against Kopcinski and Dohman.

Hester's proposed Amended Complaint hinges on his argument that his driver's license was revoked based on his test refusal and impaired driving. Because the Minnesota Supreme

Court has now determined that the Lower Sioux peace officers were not properly licensed, they could not have validly certified to the DPS Commissioner under Minn. Stat. § 169A.52, subd. 3, that probable cause existed to believe Hester had been driving while impaired and had refused to take the test.  This argument, however, is unpersuasive.

Most importantly, Hester's license was not just revoked — it was cancelled. Cancellation of a driver's license differs from revocation because it is not an automatic consequence of a peace officer's assertion.  Rather, Minn. Stat. § 171.14 provides that the DPS Commissioner "may cancel any driver's license upon determination that . . . (4) the person, at the time of the cancellation, would not have been entitled to receive a license under section 171.04." A person is ineligible for a driver's license when the DPS Commissioner "has good cause to believe that the operation of a motor vehicle on the highways by the person would be inimical to public safety or welfare."  Minn. Stat. § 171.04, subd. 1(10).  Hester's cancellation notice mirrored this language.  Zawislak Aff. Ex. 2.

The public record shows that in 2008 Hester entered into an abstinence agreement with DPS in order to reinstate his driving privileges.  He acknowledged in the agreement "that the [DPS Commissioner] will cancel and deny my privilege to drive if there is sufficient cause to believe that, after the abstinence date I have attested to above, I have consumed any drink or product containing alcohol or controlled substances."  Kopcinski Aff. Ex. 1.  Therefore, the cancellation of Hester's driver's license was independent of the peace officer's certification regarding Hester's refusal to take the chemical test.  The DPS Commissioner found sufficient cause that Hester had consumed a drink, and the DPS Commissioner was limited to consider only information obtained from properly licensed peace officers.  See Minn. Stat. § 171.04, subd.

1(10). The DPS Commissioner may properly consider even illegally obtained evidence, excludable in a criminal trial, in deciding whether to cancel a license under Minn. Stat. § 171.19 of a person who has violated a condition of licensure by consuming alcohol. See Ascher v. Comm'r of Pub. Safety, 527 N.W.2d 122, 126 (Minn. Ct. App. 1995). Furthermore, Hester failed to contest the cancellation either through judicial review or a request for administrative review. See Minn. Stat. § 171.19. Because Hester's license cancellation process was independent of the revocation of his license, his claim for injunctive relief is futile. Hester's procedural due process rights were not violated because he had an adequate opportunity to contest the underlying grounds for his license cancellation. The proposed injunctive relief is properly denied on this basis.

Hester's claim for injunctive relief also fails for futility because he has not been denied procedural due process in the revocation of his license. Hester was notified on January 5, 2009, that the basis for his revocation was his test refusal, and he was notified that he had the right to seek administrative review of the revocation or to petition the Redwood County state court for judicial review within thirty days. Zawislak Aff. Ex. 1; see Minn. Stat. § 169A.53, subd. 2(a). Under Minn. Stat. § 169A.52, subd. 3(b), Hester could have challenged the determination that the peace officer had probable cause to believe he was impaired with precisely the same argument he later made to the Minnesota Supreme Court. Because Hester waived his opportunity for administrative and judicial review, this Court will not now assume the state agency's role of fact-finding and making legal determinations. Res judicata effect will be given to final decisions in administrative proceedings. See Univ. of Tenn. v. Elliot, 478 U.S. 788, 799 (1986) (holding that when state agencies resolved disputed fact issues in which parties had

adequate opportunity to litigate, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts") (citation omitted).  In honoring the state agency's administrative findings, federalism is upheld and "the parties' interest in avoiding the cost and vexation of repetitive litigation, and the public's interest in conserving judicial resources" are advanced.  Id. at 798–99.  Accordingly, Hester's proposed injunctive relief claim against Kopcinski and Dohman is denied on this basis as well.

Hester also seeks injunctive relief to prohibit any state official from using his overturned criminal conviction as an enhancement in future criminal and civil proceedings.  Am. Compl. ¶ 74.  Hester has failed to show any real or immediate threat of future harm.  See Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000) ("In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm.").  Injunctive relief on this murky potential for future harm leads "into the area of speculation and conjecture."  O'Shea v. Littleton, 414 U.S. 488, 497 (1974).  This Court "assume[s] that [defendants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct. . . ."  Id.  For these reasons, Hester's injunctive relief claim against the State Defendants is denied.

### 3. Eleventh Amendment & Remaining State Claims

Suits against state officers acting in their official capacities based on state law violations are barred by the Eleventh Amendment.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).  Because Hester has sued Dohman, Campion, Kopcinski, and Melton solely in their official capacities, see supra Section III(b), the Eleventh Amendment bars these state law claims.  Rakow v. N. D. ex rel. State Bd. of Higher Educ, No. 98-3503, 2000 WL 227850, at *1

(8th Cir. 2000) (citing Pennhurst, 465 U.S. at 106).  Moreover, even if the state law claims survive, this Court lacks original jurisdiction and would only have supplemental jurisdiction, which it may decline to exercise.  See, e.g., Jenkins v. Cnty. of Hennepin, Minn., Civ. No. 06-3625, 2007 WL 2287840, at *8 (D. Minn. Aug. 3, 2007) ("When a district court dismisses a claim over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state-law claims that are related to that federal claim.").  No federal claims remain against Campion, Kopcinski, Melton, and Dohman, and this Court declines to exercise supplemental jurisdiction over Hester's state law claims against these defendants.

After an independent, de novo review of the Amended R&R, the Objection is overruled and the Amended R&R adopted.

## IV.  ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Hester's Objections [Docket No. 34] are **OVERRULED**;

2. Judge Keyes' Amended Report and Recommendation [Docket No. 33] is **ADOPTED**.

3. Plaintiff Hester's Motion for Leave to Amend [Docket No. 12] is **GRANTED** as to dismissing Defendant State of Minnesota and otherwise **DENIED**;

4. Defendants' Motion to Dismiss Defendant Dohman [Docket No. 2] is **GRANTED**; and

5.   Plaintiff Hester is granted leave to amend his original Complaint to assert additional claims against Patrick Rohland and Jean Stacy.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 13, 2012.