# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brian Noel Hester;

                Plaintiff,

       v.

Redwood County; Steven Collins;
The Lower Sioux Indian Community of
Minnesota; Gabe Prescott, individually
and in his capacity as President of the
Lower Sioux Indian Community of
Minnesota; Jonathan Meece, individually
and in his capacity as a police officer for
the Lower Sioux Indian Community of
Minnesota; Patrick R. Rohland; Neil
Melton; Joan Kopcinski;[1] Jean Stacy; and
Lon Walling,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-1690 ADM/JJK

---

Kenneth R. White, Esq., Law Office of Kenneth R. White, PC, Mankato, MN, on behalf of
Plaintiff.

Amanda L. Stubson, Esq., Iverson Reuvers, LLC, Bloomington, MN, on behalf of Defendants
Redwood County, Steven Collins, Patrick R. Rohland and Lon Walling.

Joseph F. Halloran, Esq., Jacobson, Buffalo, Magnuson, Anderson & Hogen PC, St. Paul, MN,
on behalf of Defendants The Lower Sioux Indian Community of Minnesota, Gabe Prescott, and
Jonathan Meece.

---

[1] Plaintiff previously made a Motion for Leave to Amend his Original Complaint
[Docket No. 12], which in part sought to add claims against Defendants Neil Melton and Joan
Kopcinski.  By Order dated March 13, 2012 [Docket No. 38], Plaintiff's motion to add these
defendants was denied.  Nonetheless, the caption of the Amended Complaint filed on April 10,
2012, includes Melton and Kopcinski.  To the extent any claims are asserted against them, they
are dismissed.

# I. INTRODUCTION

On May 3, 2012, the undersigned United States District Judge heard oral argument on Defendants Redwood County, Lon Walling ("Walling"), Patrick R. Rohland ("Rohland") and Steven Collins' ("Collins") (Redwood County, Walling, Rohland, and Collins are collectively the "Redwood County Defendants") Joint and Individual Motion for Dismissal and Summary Judgment [Docket No. 39].  Defendants the Lower Sioux Indian Community of Minnesota (the "Lower Sioux Community"), Gabe Prescott ("Prescott"), and Jonathan Meece ("Meece") also brought a Motion for Dismissal and Summary Judgment [Docket No. 43].  Plaintiff Brian Noel Hester ("Hester") asserts claims under 42 U.S.C. § 1983, as well as claims for intentional torts and negligence under Minnesota law, and opposes the motions.  For the reasons set forth below, the motions are granted.

# II. BACKGROUND[2]

The factual background of this case concerns the actions of police officers of a federally-recognized Indian tribe, within Indian Country, directed towards a member of that same federally-recognized Indian tribe.[3]  For this reason, some legal background regarding federal

---

[2] In considering Defendants' Motion to Dismiss, the Court considers the facts alleged in Plaintiff's Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).  The Court may also consider materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.  Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).  Defendants alternatively move for summary judgment, as will be discussed below.  The motions will be considered as motions to dismiss.

[3] The Lower Sioux Community appears on the List of Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs.  74 Fed. Reg. 40218, 40221 (Aug. 11, 2009).  At oral argument, Hester affirmed he was an enrolled member of the Lower Sioux Community.  The events here took place on County Road 2 in Minnesota, Aff. of Joseph F. Halloran [Docket No. 46] ("Halloran Aff.") Ex. 4 ¶ 3, and the Court takes judicial notice of the fact that County Road 2 runs through the Lower Sioux Indian Reservation.

Indian law is appropriate and will help frame and explain the factual issues.  Indian tribes, as the

sovereign political units of the indigenous peoples of the United States, predated the existence of

the United States and the English colonies that gave rise to this country.

Because Indian tribes possess a sovereignty predating the Framing of the U.S.

Constitution, and because Indian tribes were not parties to the U.S. Constitution, the Bill of

Rights and other amendments to the U.S. Constitution do not apply to Indian tribes.  Talton v.

Mayes, 163 U.S. 376, 382-85 (1896).  Rather, powers of Indian tribes may be constrained only

by the tribe itself or Congress through the Commerce Clause or the related, judicially-created

"plenary power."  See Morton v. Mancari, 417 U.S. 535, 551–52 (1974) (noting Congress's

plenary power over Indian affairs is "drawn both explicitly and implicitly" from the Indian

Commerce Clause and the President's treaty power).  Furthermore, because of Indian tribes'

sovereign status, the states generally cannot regulate or prescribe activity of Indian people within

Indian Country.  See Williams v. Lee, 358 U.S. 217, 220 (1959) ("Essentially, absent governing

Acts of Congress, the question has always been whether the state action infringed on the right of

reservation Indians to make their own laws and be ruled by them.").  For example, historically

crimes committed by Indian people within Indian Country were not subject to the jurisdiction of

any state.  See, e.g., Duro v. Reina, 495 U.S. 676, 706 n.3 (1990) ("[I]t has long been accepted

that States do not have power to exercise criminal jurisdiction over crimes involving Indians on

the reservation.") (Brennan, J., dissenting); cf. Ex Parte Kan-Gi-Shun-Ca, (otherwise known as

Crow Dog,), 109 U.S. 556, 571–72 (1883) (ruling United States did not did not have jurisdiction

over murder by one Indian of another committed within Indian reservation in Dakota Territory

absent clear act of Congress).  In August 1953, however, Congress abrogated that rule for some

tribes in some states in certain circumstances through Public Law 83-280 ("Public Law 280").

Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588 (codified as amended at 18 U.S.C. §

1162, 28 U.S.C. § 1360, and 25 U.S.C. §§ 1321–26).

Relevant here, Public Law 280 provided that the State of Minnesota would have criminal

jurisdiction over Indian Country within its borders with the exception of the Red Lake

Reservation. Id. Therefore, Minnesota's criminal jurisdiction extends to the Lower Sioux

Community. The Lower Sioux Community retains inherent criminal jurisdiction over its own

members within its territorial boundaries. See Walker v. Rushing, 898 F.2d 672, 675 (8th Cir.

1990) ("Nothing in the wording of Public Law 280 or its legislative history precludes concurrent

tribal authority."). However, in 1978, the U.S. Supreme Court ruled that Indian tribes, including

the Lower Sioux Community, do not have inherent criminal jurisdiction over non-Indian people

within their territory. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 212 (1978). The lack

of jurisdiction of Indian tribes of non-Indian people within their borders has created well-

documented problems with policing Indian Country. See generally Carole Goldberg-Ambrose,

Public Law 280 and the Problem of Lawlessness In California Indian Country, 44 U.C.L.A. L.

Rev. 1405 (1997). To improve the efficacy of police efforts within Indian Country, many Indian

tribes and local law enforcement agencies have entered into crossdeputization or similar

agreements. See, e.g., Angela R. Riley, Indians and Guns, 100 Georgetown L.J. 1675, 1731

(2012) ("Oftentimes, tribal and state police enter into crossdeputization and intergovernmental

agreements to ensure effective policing of Indian territory.").

On July 9, 1998, the Lower Sioux Community and Redwood County entered into a

Mutual Aid and Assistance Agreement. Aff. of Kenneth R. White in Supp. of Pl.'s Mem. in

Opp. to Redwood Cnty. Defs.' Mot. to Dismiss & for Summ. J. [Docket No. 50] Ex. 1 ("Mutual

Aid and Assistance Agreement").  Each respective government acted pursuant to enabling legislation for the agreement.  For Redwood County, the enabling legislation was Minn. Stat. § 626.91, which specifically addresses Minnesota's delegation of authority to the Lower Sioux Community to enforce the laws of Minnesota.  That delegation of authority is conditioned on the Lower Sioux Community filing with the Minnesota Board of Peace Officer Standards and Training a bond or certificate of insurance stating the Lower Sioux Community has certain liability insurance coverage in amounts related to the statutory maximum liability of Minnesota municipalities.  Minn. Stat. § 626.91, subd. 2(2).  This provision has been read to require not only that the Lower Sioux Community file a certificate of insurance but also actually have such insurance.  See State v. Hester, 796 N.W.2d 328, 333–36 (Minn. 2011).

Minn. Stat. § 626.91, subd. 2 includes additional conditions, and there is no dispute the Lower Sioux Community complied with those conditions at all relevant times.  Hester, 796 N.W.2d at 334 n.3.  In particular, the Lower Sioux Community passed a limited waiver of its sovereign immunity for suits arising from the acts of its police officers enforcing state law. Halloran Aff. Ex. 3.

On December 16, 2008, Hester was a passenger in his own vehicle when it became stuck in a ditch alongside the road.  Am. Compl. [Docket No. 48] ¶ 17.  Defendant Meece received a report of a motorist in need of assistance and responded to the call.  Am. Compl. ¶ 18.  Meece is employed as a police office by the Lower Sioux Police Department.  Am. Compl. ¶ 11.  When Meece responded to the call, he observed Hester outside of the truck on the driver's side, and another individual on the passenger's side.  Halloran Aff. Ex. 4 ¶ 5.  Meece detected the order of alcohol from Hester, noticed Hester's eyes were bloodshot and watery, and believed Hester to be

intoxicated.  Halloran Aff. Ex. 4 ¶ 9; Am. Compl. ¶ 18.  Another Lower Sioux Police

Department officer arrived on the scene and also noticed the odor of alcohol coming from

Hester.  Halloran Aff. Ex. 4 ¶¶ 11, 15.  That officer instructed Hester to wait in his truck rather

than outside in the cold weather, and Hester entered the truck on the driver's side.  Halloran Aff.

Ex. 4 ¶¶ 17, 19.  Hester provided Meece with his driver's license, and Meece discovered

Hester's driver's license was expired.  Halloran Aff. Ex. 5 Incident Report at 1.[4]  Meece

administered a preliminary breath test on Hester on the scene, and Hester registered a blood

alcohol concentration of 0.13.  Id.  Meece then handcuffed Hester, placed him in a Lower Sioux

Police Department squad car, and transported him to the Redwood County Jail.  Am. Compl. ¶

20.

At the Redwood County Jail, Hester was administered, and failed, field sobriety tests.

Halloran Aff. Ex. 4 ¶¶ 35-36.  Meece demanded further chemical testing from Hester, and read

Hester an "implied consent advisory," which is a statutorily-mandated notification similar to a

Miranda warning but concerning chemical testing.  Am. Compl. ¶ 21; see Minn. Stat. § 169A.51,

subd. 2 (listing required information in an implied consent advisory).  Hester refused further

chemical testing.  Am. Compl. ¶ 21.  Hester was then arrested for felony driving while impaired

and booked into the Redwood County Jail.  Halloran Aff. Ex. 5 Incident Report at 2.

Additionally, Meece issued a citation to Hester for driving without a valid license in violation of

the laws of the Lower Sioux Community.  Id.

---

[4] Exhibit 5 to the Halloran Affidavit consists of a Criminal Complaint, Initial Complaint Report, Implied Consent Advisory, Implied Consent Law Peace Officer's Certificate, and Supplemental Report.  To make pin citations possible, the Court will cite to the name of the particular sub-document followed by a page number or descriptive citation.  For example, "Incident Report at 1" refers to the first page of the Incident Report, and "Criminal Complaint at Signature Block" refers to the signature block the Criminal Complaint.

The Redwood County Attorney's Office is responsible for prosecuting Minnesota criminal law violations when arrests are made by Lower Sioux Police Department officers within the Lower Sioux Community.  Minn. Stat. § 626.91, subd. 6.  After his arrest, Hester was charged with First-Degree Driving While Impaired and First-Degree Driving While Impaired–Refusal to Test.  Halloran Aff. Ex. 5 Criminal Complaint at Count I, Count II.  In his state court criminal proceedings, Hester challenged whether Meece had probable cause to arrest him, and the trial court held that probable cause existed to arrest and to support the pending charges.  Halloran Ex. 4 ¶¶ III-IV.  The first count was dismissed before trial.  Hester, 796 N.W.2d at 330.  After a jury trial, Hester was convicted of First-Degree Driving While Impaired–Refusal to Test.  Id.

After his trial, Hester made a motion for new trial or to vacate judgment, arguing Meece and the other Lower Sioux Police Department officers were not authorized to invoke the implied consent laws of Minnesota because they were not "peace officers" as defined by Minnesota law. Halloran Aff. Ex. 6.  At that time, the parties believed the Lower Sioux Community to have liability insurance coverage in the requisite amounts.  See Halloran Aff. Ex. 8 at 4 ("[D]ocuments were sent from the POST Board, indicating that the Community both had the necessary insurance and had filed that proof with the POST Board.").

In 2006, Minn. Stat. § 466.04 had been amended to increase the maximum liability of a municipality for a claim arising on January 1, 2008, but before July 1, 2009, from $1,000,000.00 to $1,200,000.00, effective January 1, 2008.  Act of May 20, 2006, 2006 Minn. Laws ch. 232. This had the effect of raising the liability coverage required to comply with Minn. Stat. § 626.91 for the Lower Sioux Community to $1,200,000.00 for a single occurrence and $3,600,000.00 for all occurrences within the year.  Minn. Stat. § 626.91, subd. 2(2).  Therefore, at the time of Hester's arrest, the Lower Sioux Community carried only $3,000,000.00 of annual coverage,

$600,000.00 below the requirements of § 626.91.  Hester, 796 N.W.2d at 334.

Hester renewed his motion for a new trial, and the motion was denied by Order dated August 5, 2009.  Halloran Aff. Ex. 9.  The trial court reasoned that § 626.91 required only initial filings regarding insurance, which the Lower Sioux Community had undisputedly made, and, in any event, the Lower Sioux Community was in substantial compliance with the statute.  Id. at 3–4.  Hester appealed and his conviction was affirmed by the Minnesota Court of Appeals.  State v. Hester, No. A09-1784, 2010 WL 3000144, at *6 (Minn. Ct. App. Aug. 3, 2010).  The Minnesota Court of Appeals held that only "substantial compliance" with the liability insurance coverage amounts was necessary to render Lower Sioux Police Department officers "peace officers" with the "same powers" as the Redwood County Sheriff's Department.  Id.

Hester pursued his appeal to the Minnesota Supreme Court where his criminal conviction was overturned.  State v. Hester, 796 N.W.2d 328, 336 (Minn. 2011).  The Minnesota Supreme Court reasoned that under Minnesota law, not every technical omission in complying with a statute renders an act by a law enforcement officer unlawful.  Id. at 335.  However, the court ruled that compliance with the substance of a statute is required.  Id. at 336.  The court then held that compliance with the insurance requirements was substantive and not a mere technical defect. Id. Therefore, Meece was determined not to be a "peace officer" for the purposes of Minnesota's implied consent laws and Hester's conviction was overturned.  Id.  Just over two months after having his conviction overturned, Hester filed the instant action.

### III.  DISCUSSION

#### A.  Motion to Dismiss Standard

Both the Redwood County Defendants and the Lower Sioux Defendants (the Lower

Sioux Community, Prescott, Meece, and Jean Stacy[5] are collectively the "Lower Sioux Defendants") move to dismiss under Rule 12 of the Federal Rules of Civil Procedure (the "FRCP") and alternatively move for summary judgment under Rule 56 of the FRCP. Under Rule 12(d) of the Federal Rules of Civil Procedure, courts may convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment if the court considers matters outside the pleadings and all parties are given a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d). As a general rule, summary judgment under Rule 56 is proper only after the nonmovant has had adequate time for discovery. Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999) (quotation omitted). Discovery, however, is not necessary in every case, such as when a complaint is facially time-barred or the nonmovant merely seeks to "fish" for a constitutional violation. Id. (citations omitted). Public records, such as some court documents, are part of the public record and may be considered under Rule 12(b)(6). Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the

---

[5] Jean Stacy is the former President of the Lower Sioux Community. Am. Compl. ¶ 9. She has not appeared in this matter or joined in any motions. It is unclear whether she has received notice of these proceedings. As the predecessor of Prescott, and with no additional factual allegations other than her role as his predecessor, the claims against her are dismissed on the same grounds as Prescott.

complaint that there is some insuperable bar to relief." <u>Frey v. City of Herculaneum</u>, 44 F.3d 667, 671 (8th Cir. 1995).

Furthermore, the Lower Sioux Defendants' motion is also made under Rule 12(b)(1) and Rule 12(b)(2). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the Complaint either on its face or on the factual truthfulness of its averments. <u>See</u> <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge, the Court may consider matters outside the pleadings. <u>Osborn</u>, 918 F.3d at 729 n.6 (citing <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.3d 507, 511 (5th Cir. 1980)). Similarly, courts may consider matters outside the pleadings to resolve questions of personal jurisdiction in deciding a motion under Rule 12(b)(2). <u>See</u> <u>K-V Pharm. Co. v. J. Uraich & CIA, S.A.</u>, 648 F.3d 588, 591–92 (8th Cir. 2011) (ruling personal jurisdictional facts pled must be tested by affidavits and exhibits supporting or opposing motion to dismiss).

Here, in resolving questions related to Defendants' 12(b)(6) motions, the Court relies only on public records and the facts pled in the Amended Complaint. To the extent the Court relies on any other facts, it is in resolving questions of the Lower Sioux Community's sovereign immunity, which is a jurisdictional inquiry. <u>In re Prairie Island Dakota Sioux</u>, 21 F.3d 302, 304 (8th Cir. 1994). Therefore, neither of Defendants' motions will be converted to a motion for summary judgment, but rather will remain motions to dismiss.

## B.  Section 1983 Claims

Hester asserts claims under 42 U.S.C. § 1983 against each Defendant. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Section 1983 is a Reconstruction-era statute enacted by Congress for the

purpose of "interpos[ing] the federal courts between the States and the people, . . . to protect the

people from unconstitutional action under color of state law, whether that action be executive,

legislative, or judicial."  Mitchum v. Foster, 407 U.S. 225, 242 (1972) (internal quotations

omitted, citation omitted).  The essential elements of a claim under 42 U.S.C. § 1983 are (1)

whether the conduct complained of was committed by a person acting under the color of state

law and (2) whether that conduct deprived a person of rights, privileges, or immunities secured

by the Constitution or laws of the United States.  DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir.

1999) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)).

Claims under § 1983 may be made against a defendant in either an individual or official

capacity.  "Personal-capacity suits seek to impose personal liability upon a government official

for actions he takes under color of state law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985)

(citation omitted).  "Official-capacity suits, in contrast, 'generally represent only another way of

pleading an action against an entity of which an officer is an agent.'"  Id. at 165–66 (citing

Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n.55 (1978)).

A defendant sued in an individual capacity can plead the affirmative defense of qualified

immunity.  Wagner v. Jones, 664 F.3d 259, 260 (8th Cir. 2011).  A defendant is entitled to

qualified immunity unless the right he is alleged to have violated is "clearly established" at the

time of the violation.  Saucier v. Katz, 533 U.S. 194, 202 (2001) (quotation omitted).  "The

relevant, dispositive inquiry in determining whether a right is clearly established is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted."  Id. (citation omitted).  "To be clearly established, there need not be a case decided

on all fours with the present factual circumstances."  Wilson v. Lawrence Cnty., 260 F.3d 946,

951 (8th Cir. 2001) (citation omitted).  "Rather, it need only be apparent from pre-existing law that the conduct is unlawful."  Id. (citation omitted).  Courts have discretion to decide whether qualified immunity applies prior to deciding if a constitutional violation in fact occurred. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

On the other hand, municipalities and other local state government units may be liable under § 1983 only where a *policy or custom* of that entity caused the alleged constitutional violation.  Monell, 436 U.S. at 690–92 (emphasis added).  Stated another way, a local government unit is liable under § 1983 only where its policy or custom is the "moving force" behind a constitutional violation.  See id. at 694–95.

### 1. Timeliness

The first grounds for dismissal raised by both the Lower Sioux Defendants and Redwood County Defendants is timeliness.  Section 1983 does not have its own statute of limitations, rather the statute of limitations is generally the applicable state-law period for personal-injury torts.  City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 1453, 1460 n.5 (2005).  In Minnesota, the statute of limitations of tort claims is generally six years, but is two years for intentional torts such as assault or battery.  Strandlund v. Hawley, 532 F.3d 741, 746 (8th Cir. 2008) (citing Minn. Stat. §§ 541.05, subd. 1(5), 541.07(1)).  Therefore, Defendants aver the proper applicable statute of limitations here is two years.  In contrast, Hester argues the six-year statute of limitations that generally applies to torts applies.  Whether Minnesota's two-year statute of limitations for intentional torts or general six-year statute of limitations applies to § 1983 claims has been the source of inconsistent rulings.  Compare Egerdahl v. Hibbing Community College, 72 F.3d 615, 618 n.3 (8th Cir. 1995) ("In Minnesota, § 1983 claims are governed by the six-year limitations period of Minnesota's personal-injury statute."); Occhino v. United States, 686 F.2d 1302, 1307–10 (8th Cir. 1982) (applying Minnesota's six-year "catchall"

statute of limitations to § 1983 claim rather than two-year statute of limitations for intentional

torts); <u>SternJohn v. Kreisler</u>, 238 F. Supp. 2d 1104, 1111–13 (D. Minn. 2003) (applying six-year

rather than two-year statute of limitations for § 1982 claim and noting §§ 1982 and 1983 should

have same limitations periods) <u>with</u> <u>Strandlund</u>, 532 F.3d at 746 (noting statute of limitations for

§ 1983 claim had likely run using two-year period based on Minnesota's intentional tort

limitations period); <u>Cook v. City of Minneapolis</u>, 617 F. Supp. 461, 463–65 (D. Minn. 1985)

(applying two-year statute of limitations in § 1983 case); <u>see also</u> <u>Owens v. Okure</u>, 488 U.S. 235,

249–50 (1989) ("We accordingly hold that where state law provides multiple statutes of

limitations for personal injury actions, courts considering § 1983 claims should borrow the

general or residual statute for personal injury actions.").  Because Hester's claims ultimately fail

for other reasons, the Court need not attempt to harmonize these rulings, and will instead deny

the claim on its merits.

### 2. Lower Sioux Defendants

In his original Complaint, Hester captioned his case to reflect claims against Prescott and

Meece in both their individual and official capacities.  The Amended Complaint does not follow

this captioning convention.  Rather, it merely states Hester asserts claims against Meece in both

his individual and official capacities.  Am. Compl. ¶ 11.  Normally, this pleading practice alone

would preclude claims against Prescott in his individual capacity.  <u>Johnson v. Outboard Marine</u>

<u>Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her

individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings,

otherwise, it will be assumed that the defendant is sued only in his or her official capacity.").

However, no individual involvement or direct responsibility in the events here on behalf of

Prescott has been alleged, and therefore to the extent any individual capacity claims have been

alleged, they are dismissed with prejudice for that reason as well.  The remaining individual

capacity claim against Meece will be next considered, followed by the official capacity claims and claim against the Lower Sioux Community directly.

### a.  Individual Capacity Claim Against Meece

Meece is entitled to qualified immunity for his arrest and searches of Hester.  Hester argues that because the Lower Sioux Community was not in compliance with Minn. Stat. § 626.91, subd. 2, Meece only had the authority of a citizen to arrest him.  Under Minnesota law, a citizen's arrest may be made when (1) a misdemeanor or felony has been committed in the arresting person's presence, (2) the person arrested has committed a felony, even if not in the arresting person's presence, or (3) if a felony has in fact been committed and the arresting person has reasonable cause to believe the person arrested committed it.  Minn. Stat. § 629.37.  Hester challenges whether any of these conditions were met.  However, any discussion of whether the arrest was valid under Minnesota's citizen arrest statute is academic[6] because a reasonable officer in Meece's position would not have known his authority to make an arrest for a violation of Minnesota criminal laws to be lacking under Minn. Stat. § 626.91, subd. 2.

First, there is no allegation that Meece knew or should have known that the Lower Sioux Community had failed to comply with the liability insurance coverage conditions imposed by Minnesota for the delegation of authority to make arrests under Minnesota law.  The amount of liability insurance coverage a law enforcement agency carries is an overarching administrative decision outside the scope of knowledge of a line officer responding to the scene of a possible crime.  A reasonable officer on a crime scene trusts administrative concerns to be handled at the appropriate level and trusts his authority to be standard unless he has reason to question it.

---

[6] Hester was arrested for a felony independent of his chemical test refusal, but the circumstances of the felony, and when Meece knew Hester to be a repeat offender under Minnesota's drunk driving statutes, are issues better suited for summary judgment after full discovery, and will not be taken up here.

Furthermore, even if Meece did know the Lower Sioux Community's liability coverage was $3,000,000.00 when it should have been $3,600,000.00, a reasonable officer at the time would not have known that deficiency would strip Meece of his police authority.  Both the trial court and Minnesota Court of Appeals in Hester's criminal proceedings found the insurance deficiency to be insufficient to deprive Meece of the status of "peace officer" under Minnesota law.  In fact, even the Minnesota Supreme Court in overturning Hester's conviction noted that Minnesota criminal law does not always demand strict compliance with state statutes.  Hester, 796 N.W.2d at 335–36 (discussing State v. Quinn, 436 N.W.2d 758 (Minn. 1989) and State v. Frink, 206 N.W.2d 664 (1973)).  Prior to the Minnesota Supreme Court's decision, it was hardly clearly established that liability coverage insurance was the type of substantive statute that would require strict adherence.

This result is in accord with a recent analogous case.  In Engleman v. Deputy Murray, an emergency call was routed to a sheriff's office in Arkansas and the address and area code of the caller were identified with Arkansas.  546 F.3d 944, 946 (8th Cir. 2008).  Sheriff deputies responded to the call and discovered an outstanding warrant for the caller.  Id.  Notwithstanding the caller and his father's protestations that they were not in Arkansas but were in Oklahoma, the deputies arrested the caller.  Id.  The property was actually physically located in Oklahoma, even though its mailbox was in Arkansas.  Id. at 946–47.  The U.S. Court of Appeals for the Eighth Circuit ruled that the arresting deputy was entitled to qualified immunity because it was objectively reasonable for him to believe he was arresting the caller within Arkansas.  Id. at 949–51.  Similarly, it was objectively reasonable for Meece to believe he was authorized by Minnesota to enforce Minnesota criminal law and he is entitled to qualified immunity.  The § 1983 claim against him in his individual capacity is dismissed.

### b.  Claim Against the Lower Sioux Community and Official Capacity Claims

"A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself."  Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 674 (8th Cir. 2007) (citation omitted).  Moreover, if a government entity is immune from suit, an official capacity suit against an officer for damages shares in that immunity.  See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-02 (1984) (holding suits against state officials for retroactive relief barred by Eleventh Amendment).  Similarly, if a government entity is not a "person" under §1983, a suit against an officer in his official capacity for damages cannot be maintained because those damages would come from the coffers of the government entity.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 n.10 (1989).  Therefore, the §1983 claims against Prescott and Meece in their official capacities will be analyzed jointly with the claim against the Lower Sioux Community directly.

As discussed above, a local state government unit is liable under §1983 for damages if it has a policy or custom creating a constitutional violation that injures a plaintiff.  Monell, 436 U.S. 694–95.  Here, Hester avers the Lower Sioux Community's policy in 1998 of carrying $3,000,000.00 in liability insurance coverage, which in turn deprived Lower Sioux Police Department officers of the designation of Minnesota peace officers under Minnesota law, caused his false arrest.  Hester's claims, however, fail because the Lower Sioux Community is immune from suit and is not a "person" subject to suit under § 1983.

### (i) Sovereign Immunity

As sovereign entities, it is well-established that Indian tribes are immune from suit absent waiver.  Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998).  Such waiver may be accomplished only by the tribe itself or Congress.  Id.  "Waivers of immunity must be 'construed strictly in favor of the sovereign.'"  Ruckelshaus v. Sierra Club, 463 U.S. 680, 685

(1983) (quoting McMahon v. United States, 342 U.S. 25, 27 (1951)).  This immunity appears to

have been of particular concern to the Minnesota state legislature which expressly conditioned

its delegation of authority to enforce Minnesota criminal law on the tribe's waiver of sovereign

immunity for its torts and those of its officers.  Minn. Stat. § 626.91, subd. 2(1).  Indeed, the

doctrine of sovereign immunity, as it applies not only to Indian tribes but also to state and the

federal governments, has received criticism for precluding the recovery by citizens from

culpable government actors.  See Kiowa Tribe, 523 U.S. at 758 ("There are reasons to doubt the

wisdom of perpetuating the doctrine."); Feres v. United States, 340 U.S. 135, 139 (1950) (noting

that Federal Tort Claims Act was the culmination of effort to mitigate "unjust consequences" of

United States' sovereign immunity); Spanel v. Mounds View School Dist. No. 621, 118 N.W.2d

795, 802 (Minn. 1962) (criticizing continued applicability of sovereign immunity for

municipalities in Minnesota).  The Minnesota legislature expressly provided that its delegation

of law enforcement authority for Minnesota laws would be effective if the Lower Sioux

community agreed to be "subject to liability for its torts and those of its officers, employees, and

agents acting within the scope of their employment or duties arising out of the law enforcement

agency powers conferred by [Minn. Stat. § 626.91]."  Minn. Stat. § 626.91, subd. 2.

Of course, Minnesota law is not controlling on the subject of the Lower Sioux's

sovereign immunity.  Indeed, the negotiation of the Mutual Aid and Cooperation Agreement was

between a sovereign entity, the Lower Sioux Community, and a political subdivision of another

sovereign entity, Redwood County and the State of Minnesota.  With respect to the Lower Sioux

Community's sovereign immunity, only its own waiver is relevant.  In contemplation of the

Mutual Aid and Cooperation Agreement, the Lower Sioux Community's legislative body passed

Resolution No. 98-59, which includes a "Limited Waiver of Sovereign Immunity: Consent to

Jurisdiction."  Halloran Aff. Ex. 3.  That waiver provides:

Except as expressly and specifically provided in this Section, the Lower Sioux Community Council reserves its sovereign immunity from suit in tribal, federal and state courts.  The Lower Sioux Community Council hereby waives its sovereign immunity from suit and consents to jurisdiction as follows:

      a.  **Claims Arising Out of Enforcement of State Law**.  The Lower Sioux Community hereby waives its sovereign immunity from suit with respect to any claim or cause of action arising out of the enforcement of the laws of the State of Minnesota by any officer, employee or agent of the Community *acting within the scope of authority conferred upon them pursuant to Minnesota States, Section 626.91* and consents to the jurisdiction of the federal, state and tribal courts to the same extent as a municipality of the State of Minnesota pursuant to Minnesota Statutes, Section 466.

Id. (emphasis added).

Here, the entire premise of Hester's claim, as well as the entire basis for the reversal of his criminal conviction, is that Meece was acting outside the scope of authority conferred by Minn. Stat. § 626.91 because the Lower Sioux Community did not have sufficient liability insurance coverage under that section.  Hester cannot have it both ways–Meece cannot simultaneously be acting without authority under Minn. Stat. § 626.91 and within the scope of the authority conferred upon him by the same statute.  Meece is either endowed with authority to enforce Minnesota criminal law or he is not.  Whether Meece is endowed with such authority is a question of Minnesota law, and the Minnesota Supreme Court has ruled that he was not.  Hester, 796 N.W.2d at 333–36.  Whether the Lower Sioux Community has waived its sovereign immunity is a question of tribal law and federal Indian law, and it has not.  The Lower Sioux Community conditioned its wavier of sovereign immunity on its officers being duly authorized peace officers under Minn. Stat. § 626.91.  Indeed, the entire purpose of its limited waiver was to avail itself of Minnesota's delegation of law enforcement authority.  That authority was the *quid pro quo* for the Lower Sioux Community's waiver.  Without that authority, and in light of the narrow construction given to waivers of sovereign immunity, see Ruckelshaus, 463 U.S. at 685, the Lower Sioux Community is immune from suit here.  While it may seem a harsh result that suits cannot be maintained against the entity employing officials that could commit deprivations

of important rights, such is the nature of sovereign immunity.  This result is hardly aberrant and individual capacity suits are still available.  See, e.g., Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) (noting Bivens action may not be maintained against federal officials in official capacities because United States has not waived sovereign immunity, but plaintiffs may bring individual capacity claims).  Therefore, Hester's § 1983 claims against the Lower Sioux Community and against Meece, Stacy, and Prescott in their official capacities are dismissed with prejudice.

### (ii) Lower Sioux Community Not a "Person" Subject to Suit

Furthermore, Hester's § 1983 claims against Meece and Prescott in their official capacities and against the Lower Sioux Community are untenable because the Lower Sioux Community is not a "person" amenable to suit under § 1983.  Only "persons" who deprive citizens or other persons within the jurisdiction of the United States of rights conferred by federal laws under the color of state law may be liable under § 1983.  42 U.S.C. § 1983.  Indian tribes are not "persons" under the plain and ordinary usage of that word.  In fact, sovereign entities typically are not "persons," under § 1983 in particular or under statutes generally.  See Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 779 (2000) (noting longstanding interpretive presumption that "person" does not include a sovereign); see also Will, 491 at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); cf. Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, 538 U.S. 701, 704 ("The parties and, as amicus curiae, the United States agree that a Native American Tribe, like a State of the United States, is not a 'person' subject to suit under 42 U.S.C. § 1983.").  In Inyo County, the Court held that an Indian tribe was not a "person" who could sue under § 1983.  538 U.S. at 709–12.  As the Court recognized there, it would be illogical to hold that "person" used within the same statute means

two different things whether the entity is bringing suit or being sued.  Id. at 710.  Therefore,

Indian tribes are not "persons" subject to suit under § 1983.

 Nonetheless, Hester argues that the Lower Sioux Community may be subject to suit

under § 1983 based on the ruling in Armstrong v. Mille Lacs Cnty. Sheriffs Dept., 228 F. Supp.

2d 972 (D. Minn. 2002), aff'd sub nom Armstrong v. Mille Lacs Tribal Police Dept., 63 Fed.

App'x 970 (8th Cir. 2003) (unpublished).  In Armstrong, the court ruled that the Mille Lacs

Band of Chippewa Indians ("Mille Lacs") was amenable to suit under § 1983 just like a

municipality, but nonetheless granted summary judgment in favor of the tribe because the

plaintiff had failed to adduce evidence of any unconstitutional policy or custom.  228 F. Supp. 2d

at 983.  The Armstrong court based its decision that Mille Lacs was amenable to suit under §

1983 on Minn. Stat. § 696.90, a Minnesota statute very similar to § 696.91 at issue here.

Armstrong, however, is not binding on this Court because the statutes are distinct and the U.S.

Court of Appeals for the Eighth Circuit affirmed without commenting on that aspect of the

opinion in an unpublished decision.  See 8th Cir. R. 32A.1 ("[Unpublished decisions] are not

precedent.").

 Armstrong's reasoning will not be adopted because it is ultimately flawed.  The

Armstrong court reasoned that Mille Lacs could be sued under § 1983 because Mille Lacs had

agreed to be liable for "its torts and those of its officers, employees, and agents . . . to the same

extent as a municipality under chapter 466 . . . ."  228 F. Supp. 2d at 983 (citing Minn. Stat. §

626.90, subd. 2).  The Armstrong court reasoned that because municipalities may be liable under

§ 1983 under Monell theories, Mille Lacs had consented to the same.  Id.  "Tort" as used in §§

626.90 and 626.91, however, refers to state law torts, and not federal torts such as § 1983.

 The term "torts" is ambiguous.  "Tort" refers to a body of law addressing certain injuries

other than breach of contract.  Black's Law Dictionary 1626 (9th ed. 2009).  When discussing

"tort" law, it is ambiguous whether one is referring to the body of law of a particular level of government or those types of causes of action generally.  Given the federal nature of our country, "each state has its own law of torts."  Patrick H. Martin, The BP Spill and the Meaning of "Gross Negligence or Willful Misconduct", 71 La. L. Rev. 957, 976 (2011).  Section 1983 has been termed a "constitutional tort" under federal law.  See, e.g., Monell, 436 U.S. at 691 (referring to constitutional violation giving rise to § 1983 liability as a "constitutional tort").  It is unclear, therefore, whether "tort" refers to Minnesota state law torts only or torts, including constitutional torts, generally.  In determining what is meant by "torts" in Minn. Stat. § 696.91 and in the Lower Sioux Community's limited waiver of sovereign immunity, the history of Minn. Stat., ch. 466 is determinative.

Chapter 466 owes its genesis to Spanel v. Mounds View School Dist. No. 621, 118 N.W.2d 795 (Minn. 1962).  In Spanel, a father sued a school district and a teacher for negligence to recover damages for injuries his five year-old son sustained at school.  Id. at 796.  The Minnesota Supreme Court held that the claim was barred by the doctrine of sovereign immunity, but noted its intention to overrule that doctrine if the Minnesota legislature did not act to do so in its next session.  Id. at 292.  The Minnesota legislature responded by passing chapter 466.  Doyle v. City of Roseville, 524 N.W.2d 461, 432 (Minn. 1994).  Chapter 466 waives sovereign immunity and subjects every municipality in Minnesota to liability "for its torts and those of its officers, employees and agents . . . ."  Minn. Stat. § 466.02.  The waiver, however, is limited as chapter 466 caps damages at prescribed maximums.  Minn. Stat. § 466.04.  Read in that context, the reference in Minn. Stat. § 626.91 to the Lower Sioux Community being liable "to the same extent" as a municipality does not mean the Lower Sioux Community should stand in the shoes of a municipality for all possible claims, but rather that it agrees to be liable up to the same

maximum amounts and under the same circumstances as a municipality would under chapter 466 for state tort claims.

Importantly, Minn. Stat., ch. 466 was *not* read to affect the liability of municipalities under § 1983 after its passage.  In 1961, the U.S. Supreme Court ruled that municipalities were not "persons" under § 1983.  Monroe v. Pape, 365 U.S. 167, 187–92 (1961).  In 1963, ch. 466 was passed, but courts continued to hold Minnesota municipalities could not be subject to suit under § 1983.  Brown v. Ames, 346 F. Supp. 1173, 1174–76 (D. Minn. 1972) (rejecting argument that Minn. Stat. § 466.02 allowed damages claim under § 1983).  Indeed, in considering a similar statute in Missouri allowing for "torts" against municipalities, the U.S. Court of Appeals for the Eighth Circuit held that the Missouri statute waived a municipality's immunity from Missouri state tort claims *only*, and not for federal tort claims.  Nix v. Sweeny, 573 F.2d 998, 1003–4 (8th Cir. 1978).  In 1978, the U.S. Supreme Court overruled Monroe in its decision in Monell, 436 U.S. at 695–701.  Therefore, municipalities in Minnesota are liable for "constitutional torts" under § 1983 by operation of federal law, and Minn. Stat., ch. 466 affects liability only for Minnesota state law torts.  The scope of liability for the Lower Sioux Community cannot be larger than that granted by chapter 466, it consented to be liable only to that extent.  Therefore, the Lower Sioux Community has not consented to suit under § 1983 but only to Minnesota state law torts.

This reading is bolstered by another Minnesota statute.  In 1976, the Minnesota state legislature waived the state's sovereign immunity under certain circumstances for tort claims.  Minn. Stat. § 3.736.  That statute expressly references "tort claims" and provides the "state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of an employee of the state while acting in the scope of office or employment . . . ."  Id.

Notwithstanding its reference to "tort claims," that statute has never been held to serve as consent to claims for "constitutional torts" under § 1983. See Mashak v. Minnesota, Civil No. 11-473, 2012 WL 928225, at *10 (D. Minn. Jan. 25, 2012) ("Minnesota has not waived its immunity from § 1983 claims . . . nor has the State of Minnesota consented to suit.") (citations omitted). It would be anomalous, highly acrimonious, and unfair to hold that the Lower Sioux Community has consented to § 1983 claims, but Minnesota has not, where both sovereigns have agreed to answer for "tort" claims. The Court will not so hold. Therefore, for this independent reason, Hester's official capacity claims against the Lower Sioux Defendants and his claim against the Lower Sioux Community are dismissed.

### 3. Redwood County Defendants

In addition to his § 1983 claims against the Lower Sioux Defendants, Hester brings § 1983 claims against Defendants Walling, Collins, Rohland, and Redwood County. Walling is the current chair of the Redwood County Board of Commissioners. Am. Compl. ¶ 9. Collins is the current Redwood County Attorney. Am. Compl. ¶ 9. Rohland was formerly the Redwood County Attorney, and was the prosecuting attorney in Hester's criminal case. Am. Compl. ¶ 9; Halloran Ex. 5 at Signature Block of Criminal Complaint.

As a threshold matter, it is unclear whether Hester brings his claims against Walling, Collings, and Rohland in individual or official capacities. In his original Complaint [Docket No. 1], Hester captioned this case to indicate he was bringing both individual and official capacity claims against Walling and Collins. However, the Amended Complaint, which added Rohland as a Defendant, does not state in the caption or otherwise that the claims are brought against those Defendants in an individual or official capacity. This pleading practice alone warrants dismissal of individual claims against Walling and Collins, to the extent there are any. However,

the issue has been fully briefed by the parties, and for the sake of completeness those arguments will be briefly addressed before the official capacity claims and claim against Redwood County directly are considered.

### a. Individual Capacity Claims Against Walling and Rohland

Redwood County argues for dismissal of individual claims against Walling and Rohland because there are no allegations of any personal involvement in Hester's arrest, and any action by Rohland is barred by prosecutorial immunity.  Hester counters that Walling and Rohland are liable for failure to ensure the Lower Sioux Community strictly complied with Minn. Stat. § 626.91, subd. 2, and that prosecutorial immunity does not apply to administrative duties or investigative functions of prosecutors.  Buckley v. Fitzsimmons, 509 U.S3 259, 273–74 (1993) (distinguishing between prosecutorial functions and administrative/investigative duties for purposes of prosecutorial immunity).

The individual claims against Walling and Rohland fail because they are entitled to qualified immunity.  Assuming without deciding that Walling and Rohland were required to monitor the Lower Sioux Community's liability insurance coverage and that prosecutorial immunity does not apply to Rohland, reasonable county officials in their position would not have known the Lower Sioux Community's $3,000,000.00 liability insurance coverage amount would render arrests by its police officers unlawful.  As discussed above, Minnesota does not always require strict adherence with its criminal law statutes.  Hester, 796 N.W.2d at 335–36 (discussing Quinn, 436 N.W.2d 758 and Frink, 206 N.W.2d 664).  Two courts, with judges very familiar with Minnesota criminal law, held that the Lower Sioux Community's failure to strictly adhere to the liability insurance coverage amounts did not vitiate Meece's authority to arrest or demand a chemical test from Hester.  The necessity to strictly adhere to Minn. Stat. § 626.91, subd. 2,

24

was not clearly established until the Minnesota Supreme Court overturned the lower court

decisions and Hester's conviction in April 2011.  Therefore, § 1983 claims against Walling and

Rohland are dismissed on this independent basis as well.

### b.  Official Capacity Claims and Claim Against Redwood County

The gravamen of Hester's official capacity claims against the Redwood County

Defendants and his claim against Redwood County itself is that Redwood County and its

officials had a duty to ensure that the Lower Sioux Community complied with the liability

insurance coverage amounts of Minn. Stat. § 626.91, subd. 2.  As an initial matter, Redwood

County may only be liable for its own acts, § 1983 does not allow for respondeat superior

theories of liability.  Monell, 436 U.S. at 663 n.7.  Therefore, to the extent any of Hester's claims

against the Redwood Defendants are premised on his arrest by Meece, who was undisputedly not

an official of Redwood County, those claims are dismissed.  Presumably, Hester's claims are

instead premised on his continued prosecution by Redwood County officials after his arrest.

As Hester acknowledges, Redwood County's policy of prosecuting individuals suspected

of and arrested for criminal activity is not unconstitutional on its face.  See Pl.'s Mem. in Opp. to

Redwood Cnty. Defs.' Mot. to Dismiss & for Summ. J. 15 ("While the policy of utilizing the

police work of the Lower Sioux police officers is a facially neutral policy, that is not the end of

the inquiry.").  When a § 1983 plaintiff alleges not that a policy is unconstitutional on its face,

but rather that a local government unit is guilty of inaction–it should have done more to prevent

constitutional violations–a plaintiff must show "deliberate indifference" to constitutional rights.

Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 390–92 (8th Cir. 2007).  In other words, a

plaintiff must show municipal action was taken with deliberate indifference as to its known or

obvious consequences.  Id. at 390 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v.

Brown, 520 U.S. 394, 407 (1997)).

Hester's claims against the Redwood County Defendants fail because there are no factual allegations supporting a finding of deliberate indifference on behalf of Redwood County. First, as a matter of law it is not obvious that the Lower Sioux Community would fail to meet the liability coverage insurance amounts. Indeed, the Lower Sioux Community, perhaps more than any other entity here, has a paramount interest in assuring the effective and efficient enforcement of laws, whether state, tribal, or federal, within its own borders. To that end, it would be expected that the Lower Sioux Community would endeavor to comply with all statutory conditions to enforcing Minnesota criminal laws. Second, no allegations suggest that Redwood County knew of the Lower Sioux Community's noncompliance with the statute prior to initiating Hester's prosecution. Finally, and most fundamentally, even if Redwood County had known of the Lower Sioux Community's noncompliance, it was neither known or obvious that the noncompliance would render Lower Sioux police officers without authority as peace officers under Minnesota law. As discussed above, strict statutory adherence is not always required under Minnesota criminal law, and it was hardly clear that it would be required under Minn. Stat. § 626.91, subd. 2, until the Minnesota Supreme Court's ruling in State v. Hester.

**C.     State Tort Claims**

Having dismissed Hester's § 1983 claims, his remaining claims are all asserted under state law. The Court declines to exercise its supplemental jurisdiction over those claims, and they are dismissed without prejudice. See 28 U.S.C. § 1367(c).

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

26

1.  The Redwood County Defendants' Joint and Individual Motion for Dismissal and Summary Judgment [Docket No. 39] is **GRANTED**;

2.  Defendants the Lower Sioux Indian Community, Prescott, and Meece's Motion for Dismissal and Summary Judgment [Docket No. 43] is **GRANTED**; and

3.  All claims under federal law are **DISMISSED WITH PREJUDICE**;

4.  All remaining state claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 6, 2012.